BOARD OF EDUCATION OF MAINE TOWNSHIP HIGH SCHOOL DISTRICT 207 *et al.*, Plaintiffs-Appellants, v. STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 84—2415

Opinion filed December 24, 1985.

R. Theodore Clark, Jr., Robert C. Long, and Fay Hartog-Rapp, all of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, both of Chicago, of counsel), for appellees.

Barbara J. Hillman, of Cornfield & Feldman, of Chicago, for *amicus curiae* Illinois Federation of Teachers.

Lawrence Jay Weiner and Joan M. Eagle, both of Weiner, Neuman & Spak, of Chicago, for *amicus curiae* Illinois Education Association.

Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for *amicus curiae* Illinois Association of School Boards.

JUSTICE BILANDIC delivered the opinion of the court:

This is the first judicial test of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2201 *et seq.*). Plaintiffs are 15 local school districts that filed a declaratory judgment action against defendants, the State Board of Education and the State Superintendent of Education. Count I sought to declare Public Act 83—913 (Nurses' Pay Bill) void in its entirety because a "fiscal note" was not prepared in accordance

with section 8(b)(2) of the State Mandates Act. (Ill. Rev. Stat. 1983, ch. 85, par. 2208(b)(2).) In Count II, plaintiffs asserted alternatively that the Nurses' Pay Bill is unenforceable under section 8(a) of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2208(a)), unless sufficient State appropriations were made available to reimburse them for the cost of complying with the bill, which required plaintiffs to raise the salaries of their certified school nurses. Count III was identical to count II except that it challenged the enforceability of Public Act 83–876 (Certified Service Personnel Pay Bill) unless sufficient State appropriations were made to reimburse plaintiffs for the cost of compliance. Public Act 83–876 required plaintiffs to raise salaries of holders of school service personnel certificates, including nurses.

On cross-motions for summary judgment, the circuit court ruled that Public Act 83–913 was a valid and enforceable enactment. Regarding count I, the court decided that the judiciary was precluded from procedural inquiries into an enactment bill by reason of the "Enrolled Bill Rule" embodied in article IV, section 8(d) of the 1970 Illinois Constitution. (Ill. Const. 1970, art. IV, sec. 8(d).) Regarding count II, the court decided that Public Act 83–913 was a valid enactment of the legislature and enforceable. Regarding count III, the court ruled that Public Act 83–876 was unenforceable as it relates to compensation because the legislature failed to provide reimbursement for the cost of compliance as required by the State Mandates Act.

Plaintiffs have appealed the circuit court's judgment concerning the validity and enforceability of Public Act 83–913. Defendants have not appealed the court's decision on Public Act 83–876.

In order to more easily comprehend the legal issues presented in this case, we must review briefly the historical background of some pertinent facts. Prior to 1981, special interest groups would lobby the State legislature to require local governments to provide new or expanded programs or benefits. Because the State would not be required to pay for such costs incurred, legislators often yielded to the temptation to respond favorably and thereby gain popularity or political advantage. However, local taxpayers and elected officials had to shoulder the ever-increasing burden by raising taxes in order to pay for these State-imposed mandates.

Much to its credit, the Illinois General Assembly recognized this inequity and enacted the State Mandates Act. (Ill. Rev. Stat. 1983, ch. 85, par. 2201 *et seq.*, eff. Jan. 1, 1981.) It provides that the State must reimburse units of local government, including school districts, for their increased costs caused by State laws creating new programs or expanding existing ones. Because of the State Mandates Act, units

of local government are able to set a budget with the knowledge that additional programs or expenses mandated by the State will be paid by the State.

The enactment of the State Mandates Act was a major reform that the legislature voluntarily imposed on itself by an overwhelming majority. During the debates, the legislators emphasized the State Mandates Act would "make us more responsible" because "it's our own money we're spending and not somebody else's." S.B. 696, 81st General Assembly, May 17, 1979, 45th Legislative Day, p. 116 (remarks of Sen. Knuppel, the sponsor).

In general, the States Mandates Act requires the General Assembly to reimburse units of local government for the added costs of certain types of State-imposed mandates and relieves local governments of the obligation to implement such mandates if State reimbursement is not provided.

Some unnecessary confusion was created in this case when counsel used the words "exclusion" and "exemption" interchangeably in their briefs. For purposes of the State Mandates Act, "exclusion" and "exemption" are significant and should be used precisely. For example, there are only five recognized "exclusions" under the Act:

> "Sec. 8. *** (a) Exclusions: Any of the following circumstances inherent to, or associated with, a mandate shall exclude the State from reimbursement liability under this Act. If the mandate (1) accommodates a request from local governments or organizations thereof; (2) imposes additional duties of a nature which can be carried out by existing staff and procedures at no appreciable net cost increase; (3) creates additional costs but also provides offsetting savings resulting in no aggregate increase in net costs; (4) imposes a cost that is wholly or largely recovered from Federal, State or other external financial aid; (5) imposes additional annual net costs of less than $1,000 for each of the several local governments affected or less than $50,000, in the aggregate, for all local governments affected." Ill. Rev. Stat. 1983, ch. 85, par. 2208(a).

Unlike "exclusions," "exemptions" are not limited to any specific situations. Sections 8.1 through 8.8 of the State Mandates Act provided for exempt mandates. (Ill. Rev. Stat. 1983, ch. 85, pars. 2208.1-2208.8 (1984 and 1985 Supps.).)[1] The General Assembly can exempt

---

[1]The exempt mandates were created or amended by Public Acts 83—274, 83—276, 83—277, 83—327, 83—811, 83—837, 83—1362, 83—1365, 83—1377, and 83—1528.

any mandate without any limitation by so identifying the mandate, as in sections 8.1 through 8.8. The net result is an amendment of the State Mandates Act for that particular purpose.

During its 1983 session, the legislature enacted the two laws at issue that created personnel mandates, Public Act 83—876 and Public Act 83—913. This occurred over two years after the enactment of the State Mandates Act.

Public Act 83—876 dealt with holders of a service personnel certificate. It raised their benefits to the level of those holding teaching certificates. Local school boards were directed by the State to raise those benefits. This mandate was not accompanied by an appropriation bill as required by section 8(b)(4) of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2208(b)(4)); was not excluded from reimbursement under section 8(a) (Ill. Rev. Stat. 1983, ch. 85, par. 2208(a)); and was not declared an exempt mandate under sections 8.1-8.8 (Ill. Rev. Stat. 1983, ch. 85, pars. 2208.1 through 2208.8 (1984 and 1985 Supps.)).

Public Act 83—913 raised certified nurses' salaries to the level of certified teachers' salaries. As in Public Act 83—876, local school boards were mandated to raise the nurses' salaries. Similarly, the mandate for nurses in Public Act 83—913 did not have a companion appropriation bill; was not excluded from reimbursement; and was not declared an exempt mandate. However, the Nurses' Pay Bill stated in section 2:

> "The General Assembly hereby finds and declares that this amendatory Act does not require reimbursement by the State under 'The State Mandates Act.'"

It is conceded that neither public act followed the provisions of the State Mandates Act. The fiscal note requirement was disregarded and the appropriation, exclusion and exemption provisions were not followed. The trial court held that Public Act 83—876 was unenforceable for failure to comply with the State Mandates Act. Defendants did not appeal this issue, so Public Act 83—876 is not involved directly in this appeal.

The issues thus presented are: (1) whether the Nurses' Pay Bill, Public Act 83—913, is enforceable against local school districts without a companion State appropriation, exclusion or exemption; and (2) whether the bill is void in its entirety for lack of a fiscal note.

I

Plaintiffs contend that the following declaration, which was incorporated as section 2 of the Nurses' Pay Bill, does not legally avoid the requirements of the State Mandates Act:

"The General Assembly hereby finds and declares that this amendatory Act does not require reimbursement by the State under the 'State Mandates Act.' "

In enacting the State Mandates Act, the legislature imposed restraints on itself. It could not compel school districts to raise nurses' salaries without a companion appropriation (Ill. Rev. Stat. 1983, ch. 85, par. 2208(b)(4)), unless the Nurses' Pay Bill was excluded from the Act (Ill. Rev. Stat. 1983, ch. 85, par. 2208(a)), or an exemption created (Ill. Rev. Stat. 1983, ch. 85, pars. 2208.1 through 2208.8 (1984 and 1985 Supps.)).

No appropriation was made by the State for the nurses' salary increases. None of the permitted exclusions was invoked and no exemption was created.

A

■■ The issue, therefore, is whether the declaration in section 2 of the Nurses' Pay Bill avoids the legislative requisite of the State Mandates Act. Section 2 fails to assert any one of the five reason for exclusion permitted by section 8(a) of the State Mandates Act. (Ill. Rev. Stat. 1983, ch. 85, par. 2208(a).) If any one of the five authorized exclusions of the State Mandates Act was asserted, there would be no dispute about the legality of the Nurses' Pay Bill. The State Mandates Act is clear and unambiguous in defining the types of legislative mandates that are excluded from the reimbursement requirements of the Act. The question here is whether to give effect to the clear and unambiguous intent of the State Mandates Act, or to give effect to section 2 of Public Act 83—913.

Defendants assert that section 2 is a clear and unambiguous exclusion or exemption from the reimbursement requirements. Defendants fail to acknowledge, however, that the State Mandates Act, with equal if not greater clarity, defines the precise circumstances under which subsequently enacted "mandates" may be excluded from its reimbursement requirements. Two things are necessary for a mandate to be excluded from the reimbursement requirements. First, at least one of the five exclusions set forth in section 8(a) of the Act must be applicable. Second, the applicable exclusions must be "explicitly stated in the Act establishing the mandate." (Ill. Rev. Stat. 1983, ch. 85, par. 2208(a).) In the absence of an amendment or repeal of the State Mandates Act itself, this is the only circumstance under which a "mandate" can be excluded from the reimbursement requirements of the Act.

In this case, it is clear that none of these circumstances exist to exclude Public Act 83—913 from the State Mandates Act. None of the

five statutory exclusions are applicable to Public Act 83—913, and no party to this litigation has ever suggested that they are. It is equally beyond dispute that none of the statutory exclusions are "explicitly stated" in Public Act 83—913.

Consequently, in the absence of an amendment or repeal of the State Mandates Act itself, section 2 of Public Act 83—913 is simply ineffective to exclude that law from the State Mandates Act. Section 2 merely states:

> "The General Assembly hereby finds and declares that this amendatory Act does not require reimbursement by the State under 'The State Mandates Act.' "

This is a purported exclusion that can be given no effect under the clear language of the State Mandates Act. The legislature could not have been clearer in stating that general exclusions, such as section 2 of Public Act 83—913, are to be given no effect as such for purposes of the State Mandates Act.

## B

The Nurses' Pay Bill, Public Act 83—913, was passed during the 1983 session of the General Assembly. There is no dispute about the fact that the General Assembly could exclude or exempt a bill from the provisions of the State Mandates Act. In fact, the General Assembly exercised that right on at least 25 occasions during the same session.[2]

However, in this case, the General Assembly chose not to exclude or exempt, as it properly could, under sections 8 and 8.1 through 8.8 of the State Mandates Act. (Ill. Rev. Stat. 1983, ch. 85, pars. 2208, 2208.1 through 2208.8 (1984 and 1985 Supps.).) Instead, it merely made a declaration in section 2 of the Nurses' Pay Bill. This is an isolated instance in which intent is used in lieu of exclusion or exemption. The briefs of the parties and the three *amici* fail to disclose any other similar attempt by the legislature to use a declaration of intent as an exclusion or exemption.

We are not disposed to raise a declaration of intent to the level of an exclusion or exemption. Having properly exercised its power to exclude or exempt under the express provisions of the State Mandates Act, the legislature could have easily done so one more time. The de-

---

[2]The 25 Public Acts that properly amended the State Mandates Act included the following:

> Public Acts 83—152, 83—274, 83—276, 83—277, 83—327, 83—374, 83—375, 83—528, 83—558, 83—661, 83—664, 83—737, 83—772, 83—773, 83—780, 83—792, 83—793, 83—802, 83—810, 83—811, 83—812, 83—823, 83—827, 83—837, and 83—869.

clared intent never was executed and must therefore fail as a vehicle to avoid the restraints that the legislature imposed on itself by enacting the State Mandates Act.

## C

■ The legislature may at any time repeal or amend a public law. (*Railway Express Agency v. Illinois Commerce Com.* (1940), 374 Ill. 151, 156, 28 N.E.2d 116.) Article IV, section 8(d), of the 1970 Illinois Constitution requires that "[a] bill expressly amending a law shall set forth completely the sections amended." Ill. Const. 1970, art. IV, sec. 8(d).

Before the trial court, defendants argued that the Certified Service Personnel Pay Bill (Public Act 83—876), which completely ignored the State Mandates Act, constituted an amendment of the Act by implication. In answering plaintiffs' complaint, defendants admitted that Public Act 83—876 does not contain specific language relating to a legislative finding or declaration that reimbursement requirements of the State Mandates Act are inapplicable to Public Act 83—876. However, they argued that to the extent Public Act 83—876 was in conflict with the State Mandates Act, its adoption by the legislature served to amend the State Mandates Act by implication.

To tolerate an amendment of the State Mandates Act by a bill that completely ignores it would do violence to article IV, section 8(d), of the 1970 Illinois Constitution. By not appealing, defendants accepted the trial court's judgment that Public Act 83—876 is unenforceable.

Defendants contend that unlike the Certified Service Personnel Pay Bill, Public Act 83—876, the Nurses' Pay Bill, Public Act 83—913, contains a declaration of legislative intent which amounts to an "implied amendment" or an "amendment by reference" of the State Mandates Act. We have already pointed out that on at least 25 separate occasions during the same legislative session, the General Assembly excluded or exempted bills from the State Mandates Act.[3] Some of these instances were clear amendments to the State Mandates Act that added a new section specifically exempting a bill by title from the requirements of the State Mandates Act.[4] Even though it was obviously aware of the State Mandates Act when it enacted section 2 of Public Act 83—913, the General Assembly chose not to amend it.

Illinois courts do not favor implied amendments. (*County of Du Page v. Harris* (1967), 89 Ill. App. 2d 101, 109, 231 N.E.2d 195.) The

---

[3]See n.2, above.
[4]See n.1, above.

doctrine of implied amendment is typically invoked where the General Assembly inadvertently enacts a law which is irreconcilably in conflict with prior legislation. In this case, the legislature did not act inadvertently. It was aware of the State Mandates Act and chose not to amend or repeal it. This is precisely the type of situation which article IV, section 8(d), of the 1970 Illinois Constitution was intended to avoid, by requiring that "[a] bill expressly amending a law shall set forth completely the section amended." (Ill. Const. 1970, art. IV, sec. 8(d).) Calling Public Act 83—913 an implied amendment or an amendment by reference does not make it any more enforceable. Permitting an implied amendment by reason of section 2 would completely undermine the carefully crafted legislative scheme created by the General Assembly to protect itself from its own inadvertent indiscretions.

■ The heart of defendants' position appears to be their refusal to recognize that prior legislation, until properly amended or repealed, can direct subsequent General Assemblies.

While this is a case of first impression in Illinois, two recent California cases support the conclusion that Public Act 83—913 must be declared unenforceable in the absence of State reimbursement. In *County of Los Angeles v. State of California* (1984), 153 Cal. App. 3d 568, 200 Cal. Rptr. 394, two counties sued the State of California under a California statute that required reimbursement by the State for certain State-imposed costs. In its ruling in favor of the counties, the California Appellate Court held that although one legislature cannot restrict its own power or that of successor legislatures, a mandate does not restrict legislative power. "The Legislature remains free to amend or repeal" the mandate, the court said. "Until that time, the Legislature must not ignore the requirements of existing legislation." 153 Cal. App. 3d 568, 573, 200 Cal. Rptr. 394, 397.

The same reasoning is applicable to this case. The Illinois legislature was free to repeal or amend the State Mandates Act. It did neither. Therefore, Public Act 83—913 is unenforceable in the absence of State reimbursement.

*City of Sacramento v. State of California* (1984), 156 Cal. App. 3d 181, 203 Cal. Rptr. 258, supports the same conclusion. In that case, California enacted a statute requiring public employees to be covered by the State unemployment insurance law. In mandating local public employees into the system, the legislature added a provision similar to section 2 of our Nurses' Pay Bill and attempted to keep the additional cost to local governments from State reimbursement under the California Mandates Act. The city of Sacramento and county of Los Angeles sued to obtain reimbursement.

The California Appellate Court held the State was required to reimburse the units of local government in spite of the legislature's disclaimer of liability. In reasoning equally applicable to this case, the court stated:

> "The legislative disclaimers *** are merely legislative characterizations of that enactment. The interpretation of statutory language is a judicial function [citation]. while legislative declarations and characterizations are a factor we may consider in construing legislation, they are not binding [citation]. *This is particularly true when the characterization is the product of an attempt to avoid the imposition of a financial responsibility.* The Legislature's effort to label Chapter 2 a 'Federal mandate' is unavailing." (Emphasis added.) 156 Cal. App. 3d 182, 196-97, 203 Cal. Rptr. 258, 266.

Defendants seek to distinguish both of these California cases by arguing that at the time these cases were decided, California had a State Mandates Act provision incorporated into the State constitution. That is true, but also irrelevant, because the cases all turned on the enforceability of pre-existing statutory mandates provisions.

Defendants' refusal to acknowledge that the General Assembly can bind and limit subsequent General Assemblies is inconsistent with their decision not to appeal the circuit court ruling on Public Act 83—876. That act included the same mandated salary increases that are contained in Public Act 83—913. In addition, Public Act 83—876 contained no provision comparable to section 2 of Public Act 83—913. Indeed, Public Act 83—876 made no reference to the State Mandates Act. When the circuit court ruled that the relevant provisions of Public Act 83—876 were unenforceable in the absence of State reimbursement, the court adopted plaintiffs' position, and the position adopted by the California courts in analogous cases, that the legislature is bound by the requirements of existing legislation unless and until it is amended or repealed.

The same principle compels a ruling in plaintiffs' favor on Public Act 83—913. Until the legislature amends or repeals the provisions of the State Mandates Act, the courts are duty bound to follow its clear and unambiguous directives. Defendants have never offered a principled distinction to explain why Public Act 83—876 should be ruled unenforceable while Public Act 83—913 should be held enforceable. The State Mandates Act addresses directly and clearly the unenforceability of each, and we therefore conclude that Public Act 83—913 is unenforceable in the absence of a State reimbursement.

## II

■ Plaintiffs contend that Public Act 83—913 is void in its entirety because defendant State Superintendent of Education failed to file a "fiscal note" as provided in section 8(b)(2) of the State Mandates Act (Ill. Rev. Stat. 1983, ch. 85, par. 2208(b)(2)). Plaintiffs further contend that section 8(b)(2) provides that a "bill shall remain on second reading until a fiscal note is filed." A fiscal note was not filed; nevertheless, the bill proceeded to third reading in both the House and Senate and was enacted. This procedural flaw, according to plaintiffs' theory, renders the bill void.

What plaintiffs overlook is the fact that section 8(b)(2) of the State Mandates Act itself provides that it "shall be subject to" the Fiscal Notes Act. (Ill. Rev. Stat. 1983, ch. 85, par. 2208(b)(2).) The language of section 3 of the Fiscal Notes Act (Ill. Rev. Stat. 1983, ch. 63, par. 42.31 *et seq.*) leads to the conclusion that the preparation of a fiscal note is directory and not mandatory. Section 3 provides:

> "Whenever the sponsor of any measure is of the opinion that *no fiscal note is necessary,* any member of either house may thereafter request that a note be obtained, and in such case the matter shall be decided by majority vote of those present and voting in the house of which he is a member." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 63, par. 42.33.)

Undeniably, the sponsors of Public Act 83—913 did not deem it necessary to have a fiscal note prepared, nor did any member of either House request that such a note be obtained.

Plaintiffs' argument runs contrary to the express language of the Fiscal Notes Act, as incorporated into the State Mandates Act, and runs contrary to the intent of the legislature with respect to the preparation of a fiscal note.

We conclude that the trial court correctly held that the Nurses' Pay Bill, Public Act 83—913, was not void in its entirety for lack of a fiscal note. However, the trial court erred in holding the Nurses' Pay Bill enforceable against the local school districts without an appropriation of State funds to cover the cost of the mandate.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

STAMOS, P.J., and HARTMAN, J., concur.