THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 508, Plaintiff-Appellant and Cross-Appellee, v. ROLAND W. BURRIS, State Comptroller *et al.*, Defendants (Michael T. Woelffer, Director of Commerce and Community Affairs, Defendant-Appellee and Cross-Appellant).

First District (2nd Division)  No. 85—2014

Opinion filed May 27, 1986.

Murray & Girard, Ltd., of Chicago (Michael J. Murray and Richard E. Girard, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

The plaintiff appeals from an order of the trial court granting summary judgment in favor of the defendants. One of the defendants, the Director of the Department of Commerce and Community Affairs (DCCA), cross-appeals from a motion for summary judgment granted in the plaintiff's favor. The trial court found that the Direc-

tor was liable to the plaintiff under the State Mandates Act (Ill. Rev. Stat. 1985, ch. 85, par. 2201 *et seq.*).

The plaintiff in this case is the board of trustees of Community College District 508, the Chicago city colleges. In July 1984, the plaintiff brought an action in the circuit court against the Comptroller of the State of Illinois and the Director of the DCCA. In count I of its complaint, the plaintiff asked for a declaratory judgment which would provide that under the State Mandates Act, plaintiff is entitled to be reimbursed by the Comptroller for the cost of providing veterans' scholarships. Alternatively, plaintiff asked for a declaratory judgment which would provide that the Director of the DCCA is required by the State Mandates Act to notify the General Assembly that the plaintiff is entitled to be reimbursed for the cost of veterans' scholarships. In count II of its complaint, the plaintiff asked that the court order the Comptroller to reimburse the plaintiff for the cost of veterans' scholarships. Plaintiff also requested that the Director of the DCCA be ordered to notify the General Assembly of the need for an additional appropriation to provide reimbursement to the plaintiff.

On August 17, 1984, the defendants filed a motion to dismiss the plaintiff's complaint. In their motion, the defendants claimed that the plaintiff's complaint was barred by the doctrine of sovereign immunity; that the plaintiff had failed to exhaust its administrative remedies before bringing a claim in circuit court; and that the State Mandates Act did not apply to this case, so that the State was under no obligation to reimburse the plaintiff for the cost of veterans' scholarships.

On October 30, 1984, the trial court dismissed the plaintiff's complaint as to the Comptroller, but not as to the Director. The order of dismissal provided that the plaintiff was free to pursue its action against the Comptroller in the Court of Claims.

On November 16, 1984, the plaintiff amended its complaint, but asked for the same relief against the Comptroller and Director as it had in its first complaint. The Director answered the plaintiff's complaint, and the plaintiff moved for summary judgment against him. The Director also moved for summary judgment against the plaintiff.

On June 7, 1985, the court granted partial summary judgments in favor of both parties. The court determined the following in plaintiff's favor: (1) that the State Mandates Act applies to the supplemental fiscal acts which fund the veterans' scholarship program; (2) that the Director of the DCCA has a duty to notify the General Assembly that a supplemental appropriation is needed to fund the vet-

erans' scholarship program; (3) that there was no need for plaintiff to appeal the decision of the Illinois Community College Board to the Mandates Board of Appeals.

The court's order reflected the following findings in favor of the Director: (1) that the State's payment of at least 50% of the cost of veterans' scholarships satisfied the State's duty under the Mandates Act for 1982 and 1983; (2) that the Comptroller is not required to disperse funds when an amount sufficient to cover the dispersal has not been appropriated by the legislature.

The plaintiff now appeals from that part of the court's order which granted the Director partial relief in the form of a summary judgment. Plaintiff objects to the following findings: (1) that payment of 50% of the cost of veterans' scholarships has satisfied the State's duty under the Mandates Act; (2) that the Comptroller is not required to disperse funds without a sufficient appropriation.

The Director of the DCCA has cross-appealed from the court's order granting plaintiff part of the relief that it requested in its motion for summary judgment. The Director objects to the following findings: (1) that the State Mandates Act applies to supplemental fiscal enactments which fund the veterans' scholarship program; (2) that the Director must notify the General Assembly of the need for additional funding; (3) that there was no need for plaintiff to appeal to the Mandates Board of Appeals.

■ The first issue presented by this case is whether the plaintiff should have appealed the decision of the Illinois Community College Board (ICCB) to the Mandates Board of Appeals before bringing a claim in circuit court. The Director contends that since the plaintiff failed to appeal to the Mandates Board of Appeals, it did not exhaust its administrative remedies.

The Director seems to misapprehend the nature of the administrative review process set up in the State Mandates Act. It is true, as the Director notes, that where the legislature creates a specific statutory remedy, persons aggrieved by an agency action must exhaust that remedy before seeking judicial relief. (*Kreis v. Olsen* (1982), 111 Ill. App. 3d 47, 50, 443 N.E.2d 752.) Exhaustion of administrative remedies is required in situations where a party seeks judicial review of an administrative decision. The plaintiff must have been injured by the administrative action, and there must be an administrative remedy available to address the plaintiff's problem. *Ginn v. Consolidated Coal Co.* (1982), 107 Ill. App. 3d 564, 567, 437 N.E.2d 793.

■ In the present case, the plaintiff was not aggrieved by an

administrative action, so that the doctrine of exhaustion of administrative remedies is inapplicable. The plaintiff submitted a claim to the ICCB for reimbursement for the cost of providing scholarships to veterans. The plaintiff's claim was filed pursuant to the State Mandates Act, which requires the State to reimburse units of local government when they comply with a State directive. A community college must submit its claim for reimbursement to the ICCB. The ICCB can then accept the claim and order the Comptroller to pay it, or it can reduce the claim to an amount it finds more reasonable. (Ill. Rev. Stat. 1985, ch. 85, par. 2208(c).) If the community college is dissatisfied with the ICCB's decision, it can appeal to the Mandates Board of Appeals. That body's decision is then subject to judicial review. Ill. Rev. Stat. 1985, ch. 85, par. 2208(d).

Since, in this case, the ICCB accepted the plaintiff's request for reimbursement, there was no reason for the plaintiff to press its claim any further at the administrative level. Moreover, the plaintiff did not seek judicial review of an administrative decision, which is the typical situation triggering the doctrine of exhaustion of administrative remedies. Rather, plaintiff filed a claim against two State officials, seeking to compel them to act in accordance with an administrative decision. In view of this fact there was no need for the plaintiff to file an appeal with the Mandates Board of Appeals.

■ The second issue presented on appeal is whether the plaintiff is entitled under the State Mandates Act to reimbursement for the cost of veterans' scholarships. The trial court ruled that the plaintiff is entitled to at least 50% reimbursement for the cost of veterans' scholarships because the legislature's enactment of appropriations for the scholarship program was a State mandate as defined in the Mandates Act. The Director contends that the State is not required by the Mandates Act to reimburse the plaintiff for the money that it has expended from local revenues to fund the veterans' scholarships program.

To place this issue in perspective, some background on the State Mandates Act is necessary. The following excerpt from *Board of Education v. State Board of Education* (1985), 139 Ill. App. 3d 460, 462-63, 487 N.E.2d 1053, offers a most helpful explanation of the purpose of the Mandates Act:

> "In order to more easily comprehend the legal issues presented in this case, we must review briefly the historical background of some pertinent facts. Prior to 1981, special interest groups would lobby the State legislature to require local governments to provide new or expanded programs or benefits.

Because the State would not be required to pay for such costs incurred, legislators often yielded to the temptation to respond favorably and thereby gain popularity or political advantage. However, local taxpayers and elected officials had to shoulder the ever-increasing burden by raising taxes in order to pay for these State-imposed mandates.

Much to its credit, the Illinois General Assembly recognized this inequity and enacted the State Mandates Act. (Ill. Rev. Stat. 1983, ch. 85, par. 2201 *et seq.*, eff. January 1, 1981.) It provides that the State must reimburse units of local government, including school districts, for their increased costs caused by State laws, creating new programs or expanding existing ones. Because of the State Mandates Act, units of local government are able to set a budget with the knowledge that additional programs or expenses mandated by the State will be paid by the State.

The enactment of the State Mandates Act was a major reform that the legislature voluntarily imposed on itself by an overwhelming majority. During the debates, the legislators emphasized the State Mandates Act would 'make us more responsible' because 'it's our own money we're spending and not someone else's.' S.B. 696, 81st General Assembly, May 17, 1979, 45th Legislative Day, p. 116 (remarks of Sen. Knuppel, the sponsor)."

The Mandates Act requires the General Assembly to reimburse units of local government for the added cost of certain State-imposed mandates. The Act also relieves the local government of the obligation to implement State mandates if reimbursement is not provided. (*Board of Education v. State Board of Education* (1985), 139 Ill. App. 3d 460, 463, 487 N.E.2d 1053.) A State mandate is defined in the Act as "any State-initiated statutory or executive action that requires a local government to establish, expand or modify its activities in such a way as to necessitate additional expenditures from local revenues." (Ill. Rev. Stat. 1985, ch. 85, par. 2203(b).) A "service mandate" is a type of State mandate which orders the "creation or expansion of government services of the delivery standards therefore." Service mandates include but are not limited to services provided by a community college. (Ill. Rev. Stat. 1985, ch. 85, par. 2303(f).) The Act provides further that "[a]t least 50%, but not more than 100% of the increase in costs of a local government directly attributable to a service mandate" shall be reimbursed by the State, provided that the service mandate is enacted after the effective date

of the Mandates Act. Ill. Rev. Stat. 1985, ch. 85, par. 2206(b).

The plaintiff observes correctly that community colleges are required by the State to offer free tuition to qualified veterans. (Ill. Rev. Stat. 1985, ch. 126½, par. 69.1.) However, this legislative mandate on veterans' scholarships was enacted several years prior to the effective date of the Mandates Act. Consequently, the legislature's creation of the veterans' scholarship program is not covered by the State Mandates Act. See Ill. Rev. Stat. 1985, ch. 85, par. 2206(b).

The plaintiff contended below, and apparently the trial court agreed, that when the legislature failed to fully fund the veterans' scholarship program for the fiscal years 1982 and 1983, this failure to appropriate sufficient funds constituted a service mandate under the State Mandates Act. Plaintiff believes that because it was required to pay the difference between the amount appropriated for scholarships by the legislature and the amount that it actually cost to provide those scholarships, it is entitled to reimbursement from the State.

Although the legislature's action caused plaintiff to expend funds from local revenue, this appropriations bill did not create a service mandate, and the trial court erred in ruling that the veterans' scholarship program is subject to the Mandates Act. It is true that the plaintiff received only $452,875.42 in 1982 and $398,080.21 in 1983 as reimbursement for veterans' scholarships. These payments covered only about 50% of the cost of plaintiff's scholarship program for 1982 and only about 56% of the cost for 1983. Notwithstanding the fact that the plaintiff, and thus the citizens of Chicago, were forced to absorb about one-half the cost of veterans' scholarships, the legislature's partial funding of the scholarship program does not constitute a State mandate. By underfunding the scholarship program, the State did not require that colleges provide an expanded service to veterans. To the contrary, the legislature demanded that colleges provide exactly the same service to veterans. The only change wrought by the appropriations bill was that the units of local government would have to bear more of the cost of the veterans' scholarship program than they had in the past.

■ The third issue posed by this case is whether the Comptroller may be required to pay out State money when no specific appropriation of funds has been allocated for the purpose of the expenditure. Plaintiff argues that the court erred in finding that the Comptroller cannot be compelled to disperse funds without an appropriation by the legislature. According to the plaintiff, the Comptroller may release funds whenever a claimant is entitled to them by a

statutory mandate, regardless of how much the legislature has appropriated for this purpose.

Plaintiff's argument has some merit, but under the circumstances of this case, it is not entitled to any money beyond that which was appropriated by the legislature for veterans' scholarships. It is true that when a statute categorically commands the performance of an act, so much money as is necessary to fund the command may be released from the State treasury without an explicit appropriation. (*Antle v. Tuchbreiter* (1953), 414 Ill. 571, 579, 111 N.E.2d 836; *People ex rel. Kirk v. Lindberg* (1974), 59 Ill. 2d 38, 40, 320 N.E.2d 17.) In the present case, however, there is no statutory command that would justify the dispersal of funds. The State Mandates Act does not apply to the veterans' scholarship program, and the Veterans' Scholarship Act authorizes the Comptroller to disperse only those funds made available to the Department of Veterans' Affairs for the purpose of establishing veterans' scholarships. Ill. Rev. Stat. 1983, ch. 126½, par. 69.1.

In light of the foregoing, the trial court's judgment is reversed as to its findings that the State Mandates Act applies to supplemental fiscal acts which fund the veteran's scholarship program and that the Director of the DCCA has a duty to notify the General Assembly of the need for a supplemental appropriation. The court's judgment is affirmed as to its findings that there was no need for the plaintiff to appeal the decision of the ICCB to the Mandates Board of Appeals and that the Comptroller is not required to release funds without an appropriation by the legislature.

Affirmed in part and reversed in part.

BILANDIC, P.J., and HARTMAN, J., concur.