KURT M. GRANBERG *et al.*, Plaintiffs-Appellees, v. LOLETA DIDRICK-SON, as Comptroller of the State of Illinois, *et al.*, Defendants-Appellants.

First District (6th Division)    No. 1—96—0443

Opinion filed April 16, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Cacilia Reich Masover, Assistant Attorney General, of counsel), for appellants.

Michael J. Kasper, of Chicago, for appellees.

PRESIDING JUSTICE ZWICK delivered the opinion of the court:
This is an expedited appeal from the issuance of a preliminary injunction preventing defendants Kirk Brown, Loleta Didrickson, Judy Baar Topinka and Terrence Gainer from approving vouchers or warrants authorizing the expenditure of $15,792,000 which was provided by the General Assembly in section 62 of article 53 of Public Act 89—22 (hereinafter Pub. Act 89—22 or the Act). Pub. Act 89—22, art. 53, § 62, eff. July 1, 1995. Plaintiffs are State representatives who voted against the $15,792,000 appropriation contained in Public Act 89—22. The funds at issue were designated by the General Assembly for the Department of Transportation to be taken from the State Road Fund (30 ILCS 105/5, 5.42 (West 1994)), and then transferred by the Department of Transportation as "a grant to the Department of State Police for patrolling and policing public highways and support of highway safety programs." Defendants appealed the injunction pursuant to Supreme Court Rule 307(a)(1). 134 Ill. 2d R. 307(a)(1).

On or about May 26, 1995, the General Assembly passed Senate Bill 925, which implemented the budget of the State for fiscal year 1996. On June 6, 1995, the Governor approved and signed into law Senate Bill 925, which became Public Act 89—22. The Act is an appropriations bill for fiscal year 1996 and, among other provisions, appropriates $52,733,200 from the Illinois Road Fund to the Department of State Police. The Act also contains the disputed $15,792,000 appropriation to the Department of Transportation for the use by the State Police.

Pursuant to section 8.3 of the State Finance Act (30 ILCS 105/8.3 (West 1994)), monies in the road fund may be appropriated to the Department of State Police subject to certain limitations. Section 8.3 specifically provides that "no Road Fund monies shall be appropriated to the Department of State Police for the purposes of this Section in excess of its total fiscal year 1990 Road Fund appropriations for those purposes unless otherwise provided in Section 5g of this Act. It shall not be lawful to circumvent this limitation on appropriations by governmental reorganization or other methods unless otherwise provided in Section 5g of this Act." 30 ILCS 105/8.3 (West 1994). Plaintiffs alleged that the 1990 road fund appropriations to the

Department of State Police had been $52,733,200 and, consequently, that the additional $15,792,000 appropriation contained in Public Act 89—22 violated section 8.3 of the State Finance Act. Plaintiffs also raised constitutional claims. Defendants concede that the State Finance Act prohibited the $15,792,000 appropriation prior to the enactment into law of Public Act 89—22, but counter plaintiffs' arguments by maintaining that Public Act 89—22 "implicitly amended" the State Finance Act. Defendants also argue that the $15,792,000 appropriation was permissible under the State constitution.

The procedural posture of this case is unusual. On June 30, 1995, plaintiffs filed their taxpayers' petition in the circuit court. On July 10, 1995, the circuit court granted their petition, which allowed plaintiffs to file their complaint. On December 20, 1995, plaintiffs filed a motion for summary judgment. The trial court set the motion for hearing on April 24, 1996. Plaintiffs, recognizing that the funds at issue could be spent before the hearing could be held, moved for a preliminary injunction to prevent the spending of the disputed appropriation until after the issues were resolved. At the hearing on the preliminary injunction motion, on January 26, 1996, defendants' counsel conceded that the State Police would begin spending the $15,792,000 appropriation sometime in mid-April, before the scheduled hearing date. The trial court, after weighing the relevant factors and concluding that there were no issues of fact to be resolved, stated:

> "We're dealing with an appropriation bill trying to amend a substantive bill, and I don't think you can do it. The constitution, I think, is quite clear on that. *** [T]he legislature had an opportunity to change the substantive law. They didn't change the substantive law. *** [T]hey passed an appropriations bill.
>
> So it would appear to me that the preliminary injunction is actually well founded. I believe that [the plaintiffs] have no adequate remedy at law. State funds *** will be expended. [Plaintiffs cannot] recover them in a suit [at] law, and it appears to me that in a balancing of what the law is and the equities, I think that the equities are on the side of the plaintiff[s] and especially considering what the constitution says."

The court then granted the preliminary injunction. Defendants appeal.

■ For a preliminary injunction to be granted, a plaintiff must establish: (1) that he or she possesses a clearly ascertainable right which needs protection; (2) that he or she would suffer irreparable harm without the injunction; (3) there is no adequate remedy at law for his injury; (4) there is a likelihood of success on the merits; and

(5) the plaintiff will suffer more harm without the injunction than the defendant will suffer with it. *New Park Forest Associates II v. Rogers Enterprises, Inc.*, 195 Ill. App. 3d 757, 761, 552 N.E.2d 1215 (1990); see *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 387, 483 N.E.2d 1271 (1985). The trial court is vested with a large measure of discretion in the grant or refusal to grant a preliminary injunction, and its determination will not be overturned on review absent a showing of the abuse of that discretion. *Hayden's Sport Center, Inc. v. Johnson*, 109 Ill. App. 3d 1140, 1144-45, 441 N.E.2d 927 (1982); *Shorr Paper Products, Inc. v. Frary*, 74 Ill. App. 3d 498, 502, 392 N.E.2d 1148 (1979).

■ The Illinois Code of Civil Procedure clearly provides that plaintiffs have a right as taxpayers to bring this suit. 735 ILCS 5/11—301, 11—303 (West 1994). The standard for establishing a right that needs protection at the preliminary injunction phase is not difficult, requiring only that a fair question be raised as to the existence of the right claimed. *Continental Cablevision of Cook County, Inc. v. Miller*, 238 Ill. App. 3d 774, 606 N.E.2d 587 (1992). In addition, common law principles allow suits in equity by taxpayers to restrain unlawful disbursement of public monies by officers of the State. *Cusack v. Howlett*, 44 Ill. 2d 233, 254 N.E.2d 506 (1969). Consequently, plaintiffs have met the first requirement of receiving a preliminary injunction.

Second, plaintiffs were charged with showing to the trial court that there was a prospect of irreparable harm in the absence of an injunction. *Buzz Barton*, 108 Ill. 2d at 387. An irreparable injury has been described by courts as one that cannot be adequately compensated. *Wilson v. Wilson*, 217 Ill. App. 3d 844, 855, 577 N.E.2d 1323 (1991). In this case, if the preliminary injunction did not issue, defendants, by their own admissions, would have transferred and disbursed the challenged monies before the issues could be heard on the merits. If the challenged funds had been expended, plaintiffs would be irreparably harmed in two ways. First, as taxpayers, they would have been irreparably harmed by the improper expenditure of public funds. Illinois courts have long viewed public funds as being held in trust on behalf of all taxpayers and have recognized that the wrongful expenditure of public assets necessarily harms the public. *Snow v. Dixon*, 66 Ill. 2d 443, 450-51, 362 N.E.2d 1052 (1977); *Turkovich v. Board of Trustees of the University of Illinois*, 11 Ill. 2d 460, 464, 143 N.E.2d 229 (1957); *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160, 139 N.E.2d 227 (1956). Plaintiffs would also be irreparably harmed because the defendants would, if allowed, expend the challenged funds and thereby make the case moot, depriving the plaintiffs of their statutory and common law remedies.

Next, for a preliminary injunction to issue, no adequate remedy at law must exist. An adequate remedy at law is one which is clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. *Wilson*, 217 Ill. App. 3d at 856. A preliminary injunction will not be granted where the plaintiff can be adequately compensated by an award of money damages. *Wilson*, 217 Ill. App. 3d at 856. In this case, such award would not be possible if the injunction were not granted because the funds at issue would be irretrievably lost from the State Road Fund. Indeed, the statute authorizing taxpayer actions recognizes this common problem in taxpayer suits by expressly providing for the enjoining of officers of state government from disbursing public funds. See 735 ILCS 5/11—303 (West 1994).

Plaintiffs are also required to show in the trial court that they would suffer more harm without an injunction than defendants will suffer with it. *New Park Forest*, 195 Ill. App. 3d at 761. This court has stated: "Generally, the grant of the temporary relief should outweigh any possible injury which the defendant might suffer by its issuance." *Wilson*, 217 Ill. App. 3d at 849, citing *Greenspan v. Mersirow*, 138 Ill. App. 3d 294, 300, 485 N.E.2d 1196 (1985). In balancing these equities, the court should also consider the effect of the injunction on the public. See *Sports Unlimited, Inc. v. Scotch & Sirloin of Woodfield, Inc.*, 58 Ill. App. 3d 579, 583, 374 N.E.2d 916 (1978). In this case, and as we have noted, if the court did not enjoin the defendants from transferring or otherwise dispersing or expending the monies at issue before a final resolution by the circuit court, the disputed funds would be forever lost. Plaintiffs would have had no recourse once the monies were illegally spent. In contrast, by enjoining defendants from expending the monies at issue until the merits of the case could be decided, the trial court merely postponed the use of those funds by the State Police.

Defendants argue that without the $15,792,000 appropriation, necessary police services will soon have to be drastically curtailed or even eliminated. This would place the citizens of Illinois at unnecessary risk. We note, however, that at the time the court entered its preliminary injunction, the State Police had a minimum of 10 weeks of funding available to them. The General Assembly was also in session during this time. The appropriate time for us to consider the balancing of the equities in this case is at the time the court entered its preliminary injunction order, not when the parties argue on appeal. We can find no abuse of discretion in the court's decision to balance taxpayers' rights in preventing a claimed unlawful expenditure of state funds ahead of an abstract budget crisis which might or might not develop.

We turn lastly to the question of whether the plaintiffs established in the trial court that they had a likelihood of success on the merits. Since this case presents only questions of statutory validity, we properly consider the issue *de novo*. See *Maske v. Kane County Officers Electoral Board*, 234 Ill. App. 3d 508, 510, 600 N.E.2d 513 (1992) (construction of statute is a question of law to be reviewed *de novo*).

Section 8.3 of the State Finance Act establishes the amount of money that may be taken from the State Road Fund and given to the State Police each fiscal year. 30 ILCS 105/8.3 (West 1994). In *Board of Education of Maine Township High School District 207 v. State Board of Education*, 139 Ill. App. 3d 460, 487 N.E.2d 1053 (1985), this court stated that "prior legislation, until properly amended or repealed, can direct subsequent General Assemblies." *Board of Education*, 139 Ill. App. 3d at 468. In our view, this well-reasoned case is directly on point.

The *Board of Education* case involved the validity of the State Mandates Act and Public Act 83—913 (Pub. Act 83—913, eff. November 3, 1983), the nurses' pay bill. In that case, the General Assembly enacted the nurses' pay bill requiring community college districts to raise salaries of certified nurses, but did not provide corresponding funds to cover the costs of the pay raises. Plaintiffs claimed that the General Assembly's failure to appropriate funds for the nurses' pay bill violated the State Mandates Act. The State Mandates Act provides that the General Assembly may not impose new financial obligations upon local governments without providing corresponding state funds to meet those obligations. In invalidating the nurses's pay bill, this court noted that although one legislature cannot restrict the power of successor legislatures, a mandate does not restrict future legislative power. The General Assembly remains free to amend or repeal the mandate. Until it does so, however, the General Assembly " 'must not ignore the requirements of existing legislation.' " *Board of Education*, 139 Ill. App. 3d at 468, quoting *County of Los Angeles v. State*, 153 Cal. App. 3d 568, 573, 200 Cal. Rptr. 394, 397 (1984). The court went on to hold, "[u]ntil the legislature amends or repeals the provisions of the State Mandates Act, the courts are duty bound to follow its clear and unambiguous directives." *Board of Education*, 139 Ill. App. 3d at 469.

As in *Board of Education*, we are duty bound to follow the clear and unambiguous provisions of the State Finance Act. Here, the General Assembly has attempted to do circuitously what the State Finance Act specifically prevents it from doing: appropriating more than $52,733,200 from the road fund for the benefit of the State Police. If the additional $15,792,000 is needed for police services, and

we have no doubt that it is, all that is required is for the General Assembly and the Governor to enact into law either a supplemental appropriations bill or amend the State Finance Act. Indeed, our constitution requires no less.

Article IV, section 8(d), of the 1970 Illinois Constitution states that "[a] bill expressly amending a law shall set forth completely the sections amended." Ill. Const. 1970, art. IV, § 8(d). It is undisputed that the challenged appropriation exceeds the statutory limitation contained in section 8.3 of the State Finance Act. It is also undisputed that the General Assembly was made aware of the problem with Public Act 89—22 *vis a vis* the State Finance Act. See 89th Ill. Gen. Assem., House Bill 2206, 1995 Sess. Nonetheless, the General Assembly chose not to amend the State Finance Act. The exact arguments now made by the defendants with regard to "amendment by implication" were considered and rejected in *Board of Education*:

> "Illinois courts do not favor implied amendments. [Citation.] The doctrine of implied amendment is typically invoked where the General Assembly inadvertently enacts a law which is irreconcilably in conflict with prior legislation. In this case, the legislature did not act inadvertently. It was aware of the State Mandates Act and chose not to amend or repeal it. This is precisely the type of situation which article IV, section 8(d), of the 1970 Illinois Constitution was intended to avoid ***. Calling Public Act 83—913 an implied amendment or an amendment by reference does not make it any more enforceable." *Board of Education*, 139 Ill. App. 3d at 467-68.

Here, as in *Board of Education*, the General Assembly was aware of the infirmities in the contested appropriation, but chose not to amend or repeal the State Finance Act. The doctrine of amendment by implication does not apply.

Moreover, even if we were to assume that Public Act 89—22 amended section 8.3 by implication, we would still be required to find that the $15,792,000 appropriation was unconstitutional. Article IV, section 8(d), of the 1970 Illinois Constitution states succinctly that "[a]ppropriation bills shall be limited to the subject of appropriations." Ill. Const. 1970, art. IV, § 8(d). Our supreme court has made clear that a provision in an appropriations bill which purports to amend substantive law is invalid. *Benjamin v. Devon Bank*, 68 Ill. 2d 142, 368 N.E.2d 878 (1977). Here, it is not disputed that Public Act 89—22 was an appropriations bill, not a substantive bill. In fact, that legislation implemented the entire state budget for fiscal year 1996. It is also not disputed that the State Finance Act is substantive legislation. Accordingly, section 8(d) of article IV of the State Consti-

tution makes invalid any attempt by the legislature to amend the State Finance Act through an appropriations bill, such as Public Act 89—22.

Finally, we turn to our disposition of this case. Plaintiffs argue that, since the only issue on appeal involves a preliminary injunction, if we find in their favor, we must remand the case back to the circuit court for further proceedings. In light of the unusual nature of the case before us, however, we cannot agree.

It is well settled that the purpose of a preliminary injunction is to prevent a threatened wrong pending a full hearing on the merits of the case. *Wilson*, 217 Ill. App. 3d at 849. A proceeding pursuant to a preliminary injunction generally consists of an abbreviated evidentiary hearing on an emergency basis. The "findings" of a court following a preliminary hearing do not carry with them the preclusive effect of *res judicata* and are considered provisional in nature. *Electronic Design & Manufacturing, Inc. v. Konopka*, 272 Ill. App. 3d 410, 649 N.E.2d 619 (1995). This court has stated that a trial court errs when it enters a permanent injunction after a preliminary injunction hearing, instead of waiting for a "trial on the merits." *Lily of the Valley Spiritual Church v. Sims*, 169 Ill. App. 3d 624, 629, 523 N.E.2d 999 (1988).

This case serves as an exception to the general rule. Unlike a typical preliminary injunction proceeding, no issues of fact were presented in the trial court, the sole issue being one of law. The parties made clear early in the proceedings that there were no witnesses to be called and no evidence to be presented. As such, the parties never contemplated a "trial on the merits," which typically follows the entry of a preliminary injunction. After the trial court concluded that the plaintiffs had an ascertainable right to relief and that Public Act 89—22 was invalid insofar as it purported to allocate the additional $15,792,000, the circuit court should have issued a permanent injunction, rather than continuing the proceedings. We note that the trial court had received detailed memoranda outlining the respective positions of the parties with regard to the validity of the allocation. The court's comments in the record indicate that it had reached the conclusion that the allocation was unconstitutional. The issuance of a permanent injunction at this stage would have greatly expedited the resolution of this case and would have allowed the defendants the opportunity to take their appeal directly to the supreme court before this matter reached its current state of crisis. See 134 Ill. 2d R. 302(a)(1) ("Appeals from final judgments of circuit courts shall be taken directly to the Supreme Court *** in cases in which a statute of the United States or of this State has been held invalid").

Pursuant to Supreme Court Rule 366(a)(5), we retain the right to "make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." 134 Ill. 2d R. 366(a)(5). In light of this authority, and in light of our finding that the $15,792,000 allocation to the State Police made by the General Assembly in Public Act 89—22 is invalid, we decline to remand the case for what would certainly be a summary proceeding. We instead elect to exercise our authority pursuant to Supreme Court Rule 366(a)(5) and convert the trial court's preliminary injunction order into a permanent injunction.

For the foregoing reasons, the order of the circuit court is affirmed, and defendants Kirk Brown, Loleta Didrickson, Judy Baar Topinka and Terrence Gainer, in their official capacities, are permanently enjoined from expending the $15,792,000 at issue.

Order affirmed and permanent injunction issued.

McNAMARA and RAKOWSKI, JJ., concur.