Mr. Randall Mathis, Director Arkansas Department of Environmental Quality 8001 National Drive P.O. Box 8913 Little Rock, Arkansas 72219-8913
Dear Mr. Mathis:
This is in response to your request for an opinion on the authority to charge "personnel cost and personnel fringe benefits directly associated with the administration of the Petroleum Storage Tank Trust Fund as an expense of that Trust Fund."
It is my opinion that Act 1464 of 1999 (Section 22) authorizes the expenditure of at least some funds in the Trust Fund for the purposes you describe.
The "Petroleum Storage Tank Trust Fund" is established at A.C.A. §8-7-904 (Supp. 1999). It consists of "gifts, grants, donations, and such other funds as may be made available by the General Assembly, including all interest earned upon money deposited in the fund, fees assessed under this subchapter, any moneys recovered by the Department, the proceeds of bonds issued by the Arkansas Development Finance Authority for the benefit of the fund, and any other moneys legally designated for the fund." The "fees assessed under this subchapter" refers to the "Petroleum environmental assurance fee" levied on the purchase of each gallon of motor fuel or distillate special fuel purchased in or imported into the state. See A.C.A. § 8-7-906 (Supp. 1998).
Section 8-7-905 governs expenditure of moneys in the Trust Fund. This statute provides in pertinent part as follows:
 (d) Moneys in the fund may be expended by the director [of the Department of Environmental Quality] solely for the following purposes, as limited by the provisions of subsection (e)[1] of this section:
 (1) The state share mandated by the federal Resource Conservation and Recovery Act of 1976, as amended;
 (2) To pay costs incurred by the commission, the director, the Attorney General or the advisory committee in the performance of their duties under the subchapter;
 (3) To pay reimbursement for taking corrective action or to compensate owners or operators for claims by third parties for bodily injury and property damage, or both, caused by accidental releases from qualified storage tanks;
 (4) To pay reasonable and necessary costs and expenses of the department for taking corrective action caused by accidental releases from a storage tank of unknown ownership or when corrective action is not commenced by the owner or operator in a timely manner;
 (5) To reimburse owners and operators in the vicinity of the release for performing short-term testing . . .
* * *
 (f)(1) No expenditure from the fund shall be made for expenses for retrofitting or replacement of petroleum storage tanks.
 (f)(2) No expenditure from the fund pursuant to subdivision (d)(3) and (d)(5) of this section shall be made for attorneys fees. [Emphasis added.]
You mention the italicized language of (d)(2) above, and note that Act 1464 of 1999, which is the appropriation act for the Arkansas Department of Environmental Quality, contains an appropriation of funds from the Trust Fund for "Regular Salaries" and "Personal Services Matching" in the amounts of $166,243 and $41,870 for the 1999-2000 fiscal year, and $170,848 and 42,683 for the 2000-2001 fiscal year. See Acts 1999, No. 1464, § 22. Your question is therefore whether Trust Fund moneys may be expended for personnel costs and personnel fringe benefits directly associated with the administration of the Petroleum Storage Tank Trust Fund.
The language of A.C.A. § 8-7-905(d)(2) is not entirely clear as to whether it would authorize the expenditure of Trust Fund moneys for personnel costs, i.e. the costs of Department employees who aid in administering the Trust Fund. It authorizes the Fund to cover "costsincurred by . . . the commission, the director, the Attorney General, or the advisory committee . . . in the performance of their duties under this subchapter." [Emphasis added.]
Notwithstanding this ambiguity, the new appropriation act for the Department of Environmental Quality provides an express appropriation of moneys from the Trust Fund to pay for salaries and fringe benefits of state employees.
It is axiomatic that the General Assembly possesses all power to legislate except as expressly or necessarily prohibited by the Arkansas or United States Constitutions. See, e.g., Black v. Cockrill, Judge,239 Ark. 367, 389 S.W.2d 881 (1965). The appropriation contained in Act 1464 is thus valid unless it contravenes some constitutional provision.
The issue arising in this regard is whether an appropriation act may, under the Arkansas Constitution, impliedly amend or otherwise affect a substantive provision of law contained in the Arkansas Code Annotated. The most relevant constitutional provision is art. 5, § 23, which prohibits a law from being "revived, amended, or the provisions thereof extended or conferred by reference to its title only." This constitutional provision thereafter states that "so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length."
In my opinion, however, this constitutional provision is not transgressed by Act 1464. First, it does not appear clearly that Act 1464, § 22 amends or extends A.C.A. § 8-7-905. A construction issue is present, in my opinion, as to whether A.C.A. § 8-7-905(d)(2) includes the payment of personnel costs. Act 1464 of 1999 might, therefore, be characterized as more interpretive on the point than amendatory. Second, it is commonly held that provisions such as art. 5, § 23 do not prohibit implied amendments. Act 1464 does not purport to amend A.C.A. 8-7-905; it does not refer to its "title" at all. As stated in Sutherland, StatutoryConstruction (5th Ed):
 An amendment by implication need not comply with the constitutional requirement that an act shall not be amended by reference to its title only. This statement is often coupled with the phrase "complete within itself." The courts frequently recognize that a statute not amendatory in form alters, modifies, or adds to a prior statute. In order to uphold such a statute, courts rely on the fact that the statute does not purport to amend and declare that therefore the amendment is implied and not within the constitutional prohibition. The definition of an implied amendment is purely formal — it is an amendment that does not state that it is an amendment.
Id. at § 22.20. See also Arkansas Motor Carriers Association v.Pritchett, 303 Ark. 620, 798 S.W.2d 918 (1990) and Hall v. Ragland,276 Ark. 350, 635 S.W.2d 228 (1982).
In my opinion, the appropriation contained in Act 1464 is "complete within itself" and does not "amend" A.C.A. 8-7-905. Cf. Pannell v.Thompson, 91 Wash.2d 591, 589 P.2d 1235 (1979) (limitation contained in appropriations act requiring no more than a certain amount to be expended made no substantive change or amendment of statute so that its inclusion in appropriation bill did not amount to unconstitutional amendment of the general law). Act 1464 has some impact on A.C.A. § 8-7-905, however, and may be said to be interpretive of that provision.
This is not to say, however, that language in an appropriation act which affects or amends a provision of substantive law will never run afoul of art. 5, § 23. See e.g., Granberg v. Didrickson, 279 Ill. App. 3d 886,665 N.E.2d 398 (1996) (appropriation of funds in appropriation bill which was greater than express limitation in general law was unconstitutional);Washington Education Association v. State, 93 Wash.2d 37, 604 P.2d 950
(1980) (limitation on school district salary increases contained in appropriations act was unconstitutional where not "complete within itself," reference to general law was necessary to understand its effects, and plain reading of existing general statutes would be rendered erroneous by new enactment); and Flanders v. Morris, 88 Wash. 2d 183,558 P.2d 769 (1977) (substantive provision of appropriation bill, which had failed to pass as amendment to substantive law, was unconstitutionally contained in appropriation bill where it conflicted with general law).[2] In addition, the amendment of general law by the insertion of provisions in appropriation bills has, at least at the federal level, been called "bad legislative practice." See, e.g., Taylor v. Kjaer,171 F.2d 343 (D.C. Cir. 1948).
It is my opinion, particularly in light of the presumption of constitutionality attendant all legislative enactments, that Act 1464, § 22 does not run afoul of the Arkansas Constitution.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] This reference should now presumably be to section (f) of the statute, after a renumbering of the subsections by Act 951 of 1993.
[2] It should be noted that a bill proposing an appropriation similar to that contained in Section 22 of Act 1464 was introduced as a substantive bill. See S.B. 388 of 1999. It was withdrawn on March 1, 1999. The appropriation bill that became Act 1464 was amended to include the relevant portion of § 22.