PETER HALMOS *et al.*, Plaintiffs-Appellees, v. SAFECARD SERVICES, INC., Defendant-Appellant (William T. Bacon, Jr., Defendant).

First District (2nd Division)   No. 1—93—2940

Opinion filed May 2, 1995.

Skadden, Arps, Slate, Meagher & Flom, of Chicago (Susan Getzendanner, Joseph L. Fogel, Martha J. Burns, and Michael E. Gehring, of counsel), for appellant.

Latham & Watkins (James G. Hunter, Jr., and Nancy Scheurwater Hunter, of counsel), Edward T. Joyce, P.C. (Edward T. Joyce, of counsel), and Cherry & Flynn (Myron M. Cherry and Jeffrey M. Wagner, of counsel), all of Chicago, for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Safecard Services appeals from an order of injunction prohibiting it from prosecuting a claim against plaintiffs Peter Halmos and Creditline Corporation and others in the Wyoming state court. For the following reasons, we reverse the judgment of the circuit court.

Defendant, a Delaware corporation, sells subscriptions through credit card issuers by mail and telephone. Since July 1992 defendant's headquarters have been located in Cheyenne, Wyoming. Plaintiff Cherry practices law in Illinois and has provided numerous legal services to defendant since approximately 1984. Plaintiff Halmos and his brother founded defendant in 1969. After numerous disputes, Halmos and defendant parted ways in 1992.

On May 26, 1993, plaintiffs filed a complaint against defendant in the circuit court of Cook County alleging that defendant engaged in wrongful interference, defamation, breach of contract, refusal to indemnify expenses, and wrongful prevention of the exercise of stock options. Moments later, defendant filed two actions in the Wyoming federal court: one against plaintiffs Cherry & Flynn, Myron M. Cherry, P.C., and Myron M. Cherry (collectively Cherry) alleging breach of fiduciary and ethical duties of loyalty and confidentiality, attorney malpractice, and breach of contract; and a second claim against Halmos alleging wrongful conduct, insider trading, waste of corporate assets, and misappropriation of confidential information and corporate opportunities.

On July 26, 1993, the federal court dismissed the charges against Cherry for lack of personal jurisdiction and ruled that, even if jurisdiction had existed, Wyoming was not the appropriate venue for the action. Venue was improper in that federal action because defendant failed to show that a substantial part of the events giving rise to its claim against Cherry occurred in Wyoming. (28 U.S.C. § 1391(a) (1988).) On August 6, 1993, the federal court denied Halmos' motion to dismiss for failure to join High Plains Capital Corporation (HPCC) and Creditline (CLC) as indispensable parties, but granted his motion to dismiss for improper venue because defendant failed to

show that a substantial part of the events or omissions giving rise to its claim against him occurred in Wyoming.

On August 11, 1993, defendant filed a similar action against Halmos in Wyoming state court. The new claim added HPCC and CLC, two Wyoming corporations related to Halmos, as defendants. On the same day, plaintiffs filed a motion in the Cook County circuit court seeking an injunction to prohibit the Wyoming state action. On August 16, 1993, after oral argument and a review of the pleadings, the court granted the injunction and issued an order drafted by plaintiffs which incorporated language from *Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 610 N.E.2d 51, and stated that "prosecution by defendant's [*sic*] of their Wyoming State court action would result in fraud, gross wrong, and oppression, and that a clear equity is presented which requires a restraint to prevent a manifest wrong and injustice." The court stated that the language was "absolutely required." Later that afternoon, defendant argued that the court's findings were not supported by the evidence and may lead to the closure of its business. The court responded:

> "Now, I am guilty of one thing. I should not have accepted the words 'would result.' It's could result, could possibly result. I didn't make that kind of finding. That's the only thing I am going to change here, otherwise I am following the Pfaff rule."

The court denied defendant's motion to vacate the finding, but issued an amended order changing the words "would result in" to "could possibly result in." The court emphasized that the "could possibly" language related to all of its findings, including the prevention of a manifest wrong and injustice. Defendant now appeals the injunction.

## I

■ A party possesses the general right to raise an action in any, and as many, jurisdictions as it sees fit. (*Pfaff*, 155 Ill. 2d at 65.) However, an Illinois circuit court maintains the authority to "restrain the prosecution of a foreign action which will result in fraud or gross wrong or oppression; a clear equity must be presented requiring the interposition of the court to prevent manifest wrong and injustice." (*Pfaff*, 155 Ill. 2d at 58.) The exercise of such power is a matter of extreme delicacy and is to be invoked with great restraint. (*Pfaff*, 155 Ill. 2d at 43.) Specific circumstances will determine whether equitable considerations in favor of granting the injunction outweigh a party's legal right to institute and proceed with a foreign action. *Pfaff*, 155 Ill. 2d at 58.

■ Defendant contends that the circuit court's findings failed to satisfy the *Pfaff* standard. *Pfaff* requires a finding that the foreign ac-

tion "will" result in fraud, gross wrong, or oppression; or equity requires the injunction to prevent manifest wrong and injustice. The amended injunction order uses the language "could possibly" result, not "will" result. Plaintiffs argue that the circuit court's change of language from "would" result to "could possibly" result is not of substantive significance because the court stated that it was following the *Pfaff* rule and the only reason why the court amended the wording was to protect defendant from going out of business. However, the court clearly stated that it did not make a finding of "would" result. The court's findings, that the Wyoming state court action "could possibly" result in fraud, gross wrong, or oppression and "could possibly" be necessary to prevent a manifest wrong and injustice, are insufficient to enjoin a party from prosecuting a foreign action.

## II

■ Even though the circuit court's findings were insufficient to warrant the issuance of an injunction, its holding may be upheld if sufficient supporting evidence was presented. To qualify for an injunction, plaintiffs must show that either fraud, gross wrong, or oppression will result from the foreign action, or clear equity requires action to prevent a manifest wrong and injustice. *Pfaff*, 155 Ill. 2d at 58.

■ Plaintiffs contend that a fraud will result from the Wyoming state action because defendant is seeking to prosecute claims which have already been determined to have no substantial connection to Wyoming, and the principles of *res judicata* and collateral estoppel preclude defendant from raising the same claims again. The federal court dismissed the action against Halmos for improper venue after finding that a substantial part of the events giving rise to the claim against him did not arise in Wyoming. However, the Wyoming venue statute for actions against nonresidents and foreign corporations does not contain any similar requirement. A plaintiff bringing an action in Wyoming state court establishes proper venue if it resides in the county in which it raises its claim. (Wyo. Stat. § 1—5—107 (1977).) Safecard's headquarters have been located in Cheyenne, Wyoming, since 1992.

Next, plaintiffs argue that a fraud will result if defendant is allowed to pursue a state action after making contradictory representations to the Wyoming federal court. Defendant attempted to avoid dismissal of its federal claim for failure to join indispensable parties by stating at oral argument that it was not interested in disturbing any interests of CLC. After dismissal, defendant proceeded to include

CLC as a defendant in its state action. However, defendant's decision not to seek relief against CLC in federal court and its statements at oral argument about its current interests did not foreclose its right to join CLC in the state court action. Furthermore, plaintiffs fail to cite any authority defining the alleged fraudulent actions as fraud.

Plaintiffs also contend that defendant will commit a fraud by using the Wyoming state action to interfere with the circuit court's jurisdiction. Defendant filed a motion in federal court, which was granted, to prohibit subsequent depositions of persons giving depositions in the Wyoming lawsuit. Plaintiffs argue that such a motion is indicative of defendant's intentions in state court. However, this allegation, standing alone, is not sufficient to prove that prosecution of the Wyoming state claim will result in fraud.

Plaintiffs also argue that the expense and inconvenience of rebriefing and rearguing the same issues which have already been decided by the Wyoming federal court will amount to a manifest wrong and injustice. However, neither the mere inconvenience and expense of defending a foreign action nor the prospect of simultaneous, duplicative litigation constitutes a manifest wrong or injustice adequate to justify intervention. *Pfaff*, 155 Ill. 2d at 60, 74.

Also, plaintiffs contend that the injunction should be upheld because the Illinois action was filed first and it encompasses the entire Wyoming claim. However, simultaneous *in personam* proceedings over the same subject matter are permissible. (*Pfaff*, 155 Ill. 2d at 65.) A court cannot interfere with a party's right to press an action in any jurisdiction unless such prosecution will result in fraud, gross wrong, or oppression. *Pfaff*, 155 Ill. 2d at 66.

Thus, the evidence presented to the circuit court was not sufficient to justify the issuance of an injunction, and therefore we reverse the judgment of the circuit court.

Reversed.

HARTMAN and McCORMICK, JJ., concur.