JOHN CRANE INC., Plaintiff-Appellant, v. ADMIRAL INSURANCE COMPANY *et al.*, Defendants-Appellees.—JOHN CRANE INC., Plaintiff-Appellee, v. ADMIRAL INSURANCE COMPANY *et al.*, Defendants-Appellants.—JOHN CRANE INC., Plaintiff-Appellee, v. ADMIRAL INSURANCE COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—08—1845, 1—08—1918, 1—08—2057 cons.

Opinion filed May 22, 2009.

Michael H. Moirano, Edward B. Mueller, and Michael J. Daley, all of Nisen & Elliott, of Chicago, and William F. Greaney, Allan B. Moore, Joanne B. Grossman, Laird Hart, and Benjamin C. Block, all of Covington & Burling, of Washington, D.C., for appellant.

Rebecca L. Ross, Clinton E. Cameron, David F. Cutter, and Stephanie L. Haas, all of Ross, Dixon & Bell, LLP, of Chicago, for appellees Columbia Casualty Company, Continental Casualty Company, and Continental Insurance Company.

Robert R. Anderson III, John Hughes, and Daniel A. Waitzman, all of Hughes Socol Piers Resnick & Dym Ltd., of Chicago, for appellee Allstate Insurance Company.

Mary F. Stafford and Colleen Brown, both of Clausen Miller P.C., of Chicago, for appellees AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company.

Catherine M. Crisham and Kristi S. Nolley, both of Bates & Carey, of Chicago, for appellees Allianz Insurance Company, American Re-Insurance Company, and National Surety Corporation.

Matthew Farmer, of Cohn, Baughman & Martin, of Chicago, for appellee Century Indemnity Company.

Timothy J. Fagan, Michael Resis, and John D. LaBarbera, all of Smith Amundsen, L.L.C., of Chicago, for appellee TIG Insurance Company.

JUSTICE TOOMIN delivered the opinion of the court:

Plaintiff, John Crane Inc. (Crane), appeals from the grant of a preliminary injunction enjoining it from engaging in any other litigation in any forum related to insurance coverage for asbestos claims against John Crane. Certain defendants also appeal the trial court's

denial of their motion to extend the injunction through all appeals in this proceeding. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

Plaintiff, a Delaware corporation having its principal place of business in Illinois, is engaged in the manufacture and sale of engineered sealing products. Since 1979, Crane has been named as a defendant in over 250,000 underlying claims that allege liability for personal injuries sustained by claimants as a result of their exposure to Crane's asbestos-containing products. Crane and its primary insurers, Lumbermens Mutual Casualty Company and American Motorists Insurance Company (Kemper), have paid hundreds of millions of dollars in defense and indemnity of such suits.

Crane commenced this declaratory judgment action in May 2004, against Kemper and its umbrella and excess carriers to determine coverage obligations under their respective policies. In count I of its amended complaint, Crane sought a declaration that primary coverage has been exhausted. In counts II and III, Crane sought declaratory relief regarding the obligations of its umbrella and excess insurers. Defendants Columbia Casualty Company, Continental Casualty Company, and the Continental Insurance Company (the CNA defendants), filed counterclaims to determine the trigger dates in the underlying claims for which Crane has been held liable. Allianz Underwriters Insurance Company (Allianz) also filed a counterclaim seeking a determination of whether all primary policies have been exhausted. AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA (AIG defendants), filed counterclaims seeking a declaration that they have no duty to defend or indemnify John Crane. Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company (Munich), National Surety Corporation (National Surety), Allstate Insurance Company, TIG Insurance Company (TIG), Century Indemnity Company (Century), and International Insurance Company also remain as defendants.

The litigation was bifurcated, with the first phase focused on the issue of the trigger for coverage of the policies, and the second phase concerning allocation and remaining issues. During the pendency of this proceeding, the circuit court considered the coverage issues in various rulings. Pursuant to *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 47, 514 N.E.2d 150, 161 (1987), the court concluded that coverage for asbestos-related claims is governed by a "triple trigger" (*i.e.*, when the claimants were exposed to asbestos,

suffered from asbestos-related sickness, or suffered from disease caused by asbestos). Ultimately, the court entered a memorandum opinion and order on multiple motions and partial motions for summary judgment regarding issues of exhaustion, the number of occurrences, trigger, and scope of coverage.

In 2004, Crane entered into an agreement concerning coverage with Kemper, and also agreed to fully release Kemper's liability under its primary policies in exchange for payment of $10 million. In 2006, Crane also entered into a second settlement agreement with Kemper for $20 million, releasing Kemper from all remaining obligations under both its primary and excess policies.

In its ruling of April 12, 2006, the circuit court determined that all of the underlying claims constituted a single occurrence arising from the manufacture, sale, and distribution of Crane's asbestos products. The court also determined that the proper allocation among the umbrella insurers was *pro rata* and that the *Raymark* triple-trigger would not necessarily trigger all excess policies. The court ruled that a hearing with medical testimony was also necessary to determine whether new medical findings since *Raymark* necessitated a different trigger ruling. The court further found that claims in which liability was imposed on Crane were ripe for adjudication of the declaratory judgement issues, and that underlying cases that remained pending were not ripe for determination of costs of defense and indemnification. However, the court ruled it could not determine whether there was exhaustion based upon the settlement agreements without the input of additional briefing and an evidentiary hearing.

Mediation was scheduled with trial to commence on the remaining issue of exhaustion of primary coverage. By February 2008, the parties reached a tentative stipulation governing the exhaustion of certain primary policies and the limits on those remaining. However, this tentative agreement was not finalized as Crane rejected a tolling provision whereby the parties would bring any future coverage disputes before the presiding judge. Crane also indicated it intended to bring additional lawsuits against its insurers in other areas of the country.

Adhering to that announcement, Crane then filed five actions in California, Ohio, Texas, Virginia, and West Virginia. In the California and Virginia cases against the CNA defendants, Crane sought money damages for breach of contract and bad faith for refusal to pay their *pro rata* shares of final judgments in three underlying asbestos actions, based on the prior declaratory coverage rulings in the case *sub judice*. According to Crane, the $9.075 million in primary policies underlying the CNA umbrella policies was exhausted. Additionally, from testimony at the preliminary injunction hearing, Crane claimed

to have incurred approximately $45 to $50 million in costs defending the asbestos claims and satisfying adverse judgments. In the Ohio, Texas, and West Virginia actions, Crane sought a declaration of the *Raymark* trigger dates for coverage.

The CNA defendants moved for a temporary restraining order against Crane on May 15, 2008, which was joined by other defendants. However, the parties entered into an agreed standstill order effective May 19, 2008, through June 4, 2008, while unsuccessfully engaging in court-ordered mediation. On June 4, 2008, the circuit court issued the temporary restraining order (TRO). Crane then sought interlocutory review, which we denied.

Defendants (except Century Indemnity Company and International Insurance Company) next moved for a preliminary injunction. At the hearing, Daniel Caswell, an in-house attorney for CNA, highlighted the potential harm to the CNA defendants if forced to litigate the foreign actions as the identical coverage issues were already before the circuit court. He further testified the untimely litigation was oppressive. Crane presented the testimony of its outside counsel, Edward Mueller, who maintained that the recently commenced litigation was necessary to determine the application of the court's trigger ruling to the underlying cases in the California and Virginia actions, and that prospective application of the trigger ruling in the Ohio, West Virginia and Texas proceedings would likewise provide the defendant insurers the opportunity to develop the proofs necessary to resolve those issues.

The court granted the preliminary injunction, finding that the allegations in the litigation in the other jurisdictions were substantially similar to those in the case *sub judice*, and further finding that requiring the defendants to defend in the foreign litigation would be harassing and oppressive. The court's order expressly provided that: (1) the preliminary injunction motion is granted; (2) John Crane is enjoined from taking any action in the five lawsuits; (3) John Crane is enjoined from filing any additional actions against the defendants related to Crane's right to insurance coverage for asbestos claims; (4) John Crane is enjoined from taking any action in any forum that would impede the ability of the circuit court from rendering a final adjudication in the instant case; (5) John Crane is to file and notify all the courts where it has filed actions related to insurance coverage for asbestos claims of the preliminary injunction order in this case; and (6) the preliminary injunction order will stay in effect until 30 days after this case is disposed of on the merits. Various defendants then moved to extend the preliminary injunction through all appeals in this proceeding, which the court denied.

Crane appealed the grant of the preliminary injunction, while the CNA defendants and certain defendants appealed the court's ruling refusing to extend the duration of the preliminary injunction through the resolution of all appeals in this proceeding. By our order of August 5, 2008, we consolidated all appeals. The CNA defendants have refused to pay any part of the underlying asbestos judgments based on the court's trigger ruling until all appeals from the circuit court orders are resolved.

Oral argument was heard on March 10, 2009. That same day, the circuit court entered a memorandum opinion and order, finding that Crane did not sustain its burden in proving that the primary policies for the claims underlying this action were exhausted and dismissing the counterclaims as moot. We granted the motion of certain defendants, with which Crane agreed, to take judicial notice of the circuit court's order and of the fact that the preliminary injunction would terminate on April 9, 2009.

## ANALYSIS

Initially, we note that many statements in John Crane's statement of facts contravene Supreme Court Rule 341(h)(6). 210 Ill. 2d R. 341(h)(6). Defendants urge us to strike Crane's entire statement of facts. Contemporaneous motions to strike a party's statement of facts for violations of Supreme Court Rule 341(h)(6) on appeal are within this court's power. See *Board of Managers of Eleventh Street Loftominium Ass'n v. Wabash Loftominium, L.L.C.*, 376 Ill. App. 3d 185, 187, 876 N.E.2d 65, 68 (2007). However, here defendants did not file a concurrent motion seeking such relief, but simply made this request in their response brief. Additionally, we will not strike a party's statement of facts unless it includes such flagrant improprieties that it hinders our review of the issues. *Lock 26 Constructors v. Industrial Comm'n*, 243 Ill. App. 3d 882, 886, 612 N.E.2d 989 (1993). Here, plaintiff's rendition of the facts is not so egregious as to warrant the action requested, but rather any inappropriate or unsupported statements shall be disregarded. See *Lock 26 Constructors*, 243 Ill. App. 3d at 886, 612 N.E.2d at 992.

■ The primary issue before us concerns the propriety of the issuance of the preliminary injunction enjoining the foreign litigation. Section 2—619(a)(3) of the Illinois Code of Civil Procedure provides that a defendant may move for a dismissal or stay whenever there is "another action pending between the same parties for the same cause." 735 ILCS 5/2—619(a)(3) (West 2004). This provision is designed to avoid duplicative litigation and is to be applied to carry out that purpose. *Kellerman v. MCI Telecommunications Corp.*, 112

Ill. 2d 428, 447, 493 N.E.2d 1045, 1053 (1986). The "same parties" and "same cause" requirements in section 2—619(a)(3) are threshold factors which must be met in issuing an injunction or stay. See 735 ILCS 5/2—619(a)(3) (West 2004). See also *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1091, 729 N.E.2d 36, 39-40 (2000). In *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 610 N.E.2d 51 (1992), the Illinois Supreme Court set forth the general standard governing the granting of injunctions against foreign litigation:

> "[T]he trial court has the authority to restrain the prosecution of a foreign action which will result in fraud or gross wrong or oppression; a clear equity must be presented requiring the interposition of the court to prevent manifest wrong and injustice. What constitutes a wrong and injustice requiring the court's interposition must necessarily depend upon the particular facts of the case. There is no general rule as to what circumstance constitutes a proper case for the exercise of the trial court's discretion. The granting of an injunction will depend on specific circumstances as to whether equitable considerations in favor of granting the injunction outweigh the legal right of the party who instituted the foreign action. [Citations.]" *Pfaff*, 155 Ill. 2d at 58, 610 N.E.2d at 61.

The parties further posit that some confusion clouds whether the *Pfaff* factors alone apply in the enjoining of foreign litigation, or whether the traditional elements supporting preliminary injunctions also apply. This question was recently addressed by the Second District in *In re Marriage of Gary*, 384 Ill. App. 3d 979, 894 N.E.2d 809 (2008). The court noted:

> "In general, courts have not required that parties seeking to enjoin later-filed actions demonstrate the existence of the elements typically needed for injunctive relief in other contexts, such as a clearly ascertained right in need of protection, irreparable injury if the injunction is not granted, the lack of any adequate remedy at law, and a likelihood that the movant will ultimately prevail on the merits. [Citation.] Instead, courts have enjoined parties from filing or proceeding with actions in other Illinois courts where (a) either the parties and the legal issues involved are the same or the issues involved in the later-filed action are of the type that can and should ordinarily be disposed of in the course of the original action; and (b) there does not appear to be any proper purpose for the maintenance of the later-filed action." *In re Marriage of Gary*, 384 Ill. App. 3d at 983-84, 894 N.E.2d at 813.

After reviewing cases where an injunction against foreign litigation was upheld without reliance on any of the traditional preliminary injunction elements, the *Gary* court held that "a litigant seeking to enjoin later-filed actions in other Illinois courts need not demonstrate

the existence of the factors for typical injunctions \*\*\* and may obtain an injunction where: (a) either the parties and the legal issues involved are the same or the issues involved in the later-filed action are of the type that can and ordinarily should be disposed of in the course of the original action; and (b) there does not appear to be any proper purpose for the maintenance of the later-filed action." *In re Marriage of Gary*, 384 Ill. App. 3d at 986-87, 894 N.E.2d at 816. We agree and find the Second District's analysis and reasoning cogent. While the circuit court here additionally found that the defendants had established the traditional elements for granting a preliminary injunction, such analysis was unnecessary as the weight of precedent applies the *Pfaff* factors, and not the typical preliminary injunction analysis.

The criteria that inform this decision under *Pfaff* include: comity; the prevention of multiplicity, vexation and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum. *Hapag-Lloyd*, 312 Ill. App. 3d at 1091, 729 N.E.2d at 39-40. However, it is well settled that the sole factor of prior jurisdiction is not sufficient, absent equitable considerations, to provide a basis to enjoin a suit in a foreign jurisdiction. *National Hockey League v. Intermart, Inc.*, 127 Ill. App. 3d 1072, 1077, 470 N.E.2d 1, 4 (1984), citing *Illinois Life Insurance Co. v. Prentiss*, 277 Ill. 383, 387, 115 N.E. 554, 556 (1917), and *Lowe v. Norfolk & Western Ry. Co.*, 96 Ill. App. 3d 637, 644, 421 N.E.2d 971, 977 (1981). Nor will mere inconvenience and expense of defending a foreign action constitute a manifest wrong or injustice adequate to justify an injunction. Nonetheless, where complete relief can be had in the local forum, the institution of foreign proceedings will be regarded as vexatious and harassing of the opposite party. *Lowe*, 96 Ill. App. 3d at 643-44, 421 N.E.2d 971 at 976. A court " 'has a duty, as well as power, to protect its jurisdiction over a controversy in order to decree complete and final justice between the parties and may issue an injunction for that purpose, restraining proceedings in other courts.' [Citation.]" *Lowe*, 96 Ill. App. 3d at 644, 421 N.E.2d at 977.

Our precedent supports the conclusion that a court's decision to grant relief or to allow actions to proceed in different jurisdictions is a matter of the trial court's discretion. *Kellerman*, 112 Ill. 2d at 447, 493 N.E.2d at 1053. Under the abuse of discretion standard, we do not substitute our judgment for that of the trial court, nor do we determine whether the trial court acted wisely. *Members Equity Credit Union v. Duefel*, 295 Ill. App. 3d 336, 342, 692 N.E.2d 865, 869 (1998). The cornerstone of this standard of review allows us to reverse only when no reasonable person could adopt the view taken by the lower court. *In re Marriage of Getautas*, 189 Ill. App. 3d 148, 153, 544 N.E.2d 1284, 1286 (1989).

An abuse of discretion was found in *Zurich Insurance Co. v. Baxter International, Inc.*, 173 Ill. 2d 235, 670 N.E.2d 664 (1996), wherein the Illinois proceeding was stayed in favor of California litigation. The *Zurich* court noted the foreign case was less comprehensive, the forum's public policy was contrary to that of Illinois, and the pending action involved a greater number of excess insurers and claimants. *Zurich*, 173 Ill. 2d at 245-47, 670 N.E.2d at 669-70. It was also an abuse of discretion to deny an injunction where the appellate court "detect[ed] the aroma of legal harassment" in a second action by the defendant insurer involving the same parties. *Crowley v. Golden Rule Insurance Co.*, 166 Ill. App. 3d 199, 202, 519 N.E.2d 1191, 1193 (1988). See also *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 496, 739 N.E.2d 639, 647-48 (2000) (injunction against foreign litigation was upheld notwithstanding the similarity between federal and state claims because most of the state actions also included various consumer-protection claims). Additionally, in *Lucent*, discovery in the Illinois case was further along while the federal cases were not progressing.

■ In the case *sub judice*, we find that the court correctly applied the requirements of section 2—619(a)(3) and the *Pfaff* standard in the exercise of its discretion. In adherence to *Pfaff*, the court appropriately determined that: (1) the facts presented at the preliminary injunction hearing were "virtually identical" to the record for the TRO and John Crane did not provide any evidence justifying a different result; (2) the complaints in Ohio, Texas, and West Virginia contain allegations that mirror the issues in the trial court; (3) the California and Virginia actions contain allegations regarding primary exhaustion and trigger dates, the same issues before the trial court in this case; (4) plaintiff is asking foreign jurisdictions to apply the circuit court's trigger rulings before the circuit court has had an opportunity to do so; (5) some of the foreign declaratory judgment actions seek a declaration of trigger dates and coverage prior to adjudication of the underlying actions and are thus premature; and (6) John Crane might get additional relief beyond that requested in the Ohio, Texas, and West Virginia actions, as those are notice-pleading states.

Additionally, in comparing the allegations of the various foreign complaints with the allegations in the case at bar, the circuit court determined that "[b]ased upon a review of the facts presented and the complaints filed in Texas, Ohio, West Virginia, California, and Virginia, the Court finds the parties are highly likely to relitigate the issues raised, those already decided, and those still pending in this case. By requiring [defendants] to appear and defend the foreign claims, Crane is acting in a manner which is oppressive and furthers a manifest wrong and injustice."

Crane asserts that the circuit court was incorrect in concluding that it is attempting to relitigate the same issues present in this case. Crane also contends that the subject matter of the litigation in the other forums is different as it is seeking monetary damages, rather than declaratory relief, and maintains that the cases involved in the foreign litigation are not part of the 67 underlying cases in the proceeding below. However, that construct tacitly identifies a distinction rather than a difference, for the "same cause" requirement of section 2—619(a)(3) is met where both causes are based on substantially the same underlying facts or issues. *Hapag-Lloyd*, 312 Ill. App. 3d at 1095, 729 N.E.2d at 42-43. Merely because there are other additional issues and questions in one case does not destroy the substantial similarity of issues between the two cases. *Perimeter Exhibits, LTD. v. Glenbard Molded Binder, Inc.*, 122 Ill. App. 3d 504, 508, 461 N.E.2d 44, 49 (1984). See *Kapoor v. Fujisawa Pharmaceutical Co.*, 298 Ill. App. 3d 780, 786-87, 699 N.E.2d 1095, 1100-01 (1998) (federal court Racketeer Influenced and Corrupt Organizations action and state action for breach of contract and indemnity were for "same cause" where both arose out of alleged concealment of Food and Drug Administration violations during a stock purchase).

As noted, Crane posits that in the Ohio, Texas and West Virginia proceedings it seeks only the application of the circuit court's trigger ruling; that these cases afford the defendant insurers an opportunity to participate and develop the proofs. However, the circuit court disagreed, finding that "the parties are highly likely to relitigate the issues raised, those already decided, and those still pending in this case." The court found that such litigation was oppressive because "[i]n essence, Crane is forcing the insurers to litigate every underlying claim filed against Crane in Ohio, Texas, West Virginia, and any other state where such action is filed, even though Crane only pays indemnity for a fraction of the adverse judgments." Even as to sole issue of establishing trigger dates, the court noted that, "Crane is asking foreign jurisdictions to apply this Court's trigger ruling, even before this Court has had an opportunity to do so." Also, the court noted that, to the extent Crane sought a declaration of trigger dates for unpaid claims, under Illinois law and the law of the foreign jurisdictions, the relief sought was "potentially premature." We agree with the circuit court's determinations.

We further find persuasive the CNA defendants' argument that Crane's efforts to obtain a declaration on the duty to indemnify before findings of liability are entered in the foreign underlying cases is manifestly premature, both in Illinois as well as in the foreign jurisdictions. See *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385

Ill. App. 3d 23, 42, 895 N.E.2d 940, 957 (2008), citing *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 373, 622 N.E.2d 66, 68 (1993). See also *Mt. Hawley Insurance Co. v. Steve Roberts Custom Builders, Inc.*, 215 F. Supp. 2d 783, 793 (E.D. Tex. 2002) (seeking a declaration of the duty to indemnify is not yet ripe prior to a determination of underlying liability); *Chemstress Consultant Co. v. Cincinnati Insurance Co.*, 128 Ohio App. 3d 396, 402, 715 N.E.2d 208, 212 (1998) (duty to indemnify is based on liability); *Robinson v. Cabell Huntington Hospital, Inc.*, 201 W. Va. 455, 463, 498 S.E.2d 27, 35 (1997) (duty to indemnify the insured is contingent upon a judgment against it). The fact that the grounds for bringing the foreign actions prematurely are questionable lends further credence to the circuit court's determination that the other litigation was harassing and oppressive.

Crane also maintains that its claims in the California and Virginia actions are not encompassed in this declaratory judgment action, but instead merely seek money damages. However, the circuit court found that notwithstanding the monetary damage considerations, those actions also raise issues that are integral to the instant case, namely, the trigger of the policies and exhaustion of coverage. We likewise conclude that Crane has failed to demonstrate how the coverage issues it seeks to litigate in the foreign actions are not substantially the same coverage issues decided in the proceedings below.

Moreover, Crane's multiple actions in the foreign jurisdictions are substantially similar to the instant case because they seek declaratory judgments and application of the same coverage issues, involving the same parties, and the same insurance policies and subject matter. We therefore find that filing multiple actions in those forums after four years of litigation of the coverage issues in the instant case is essentially an attempt to join the defendants in every underlying asbestos claim and is indeed harassing and oppressive. We conclude that the trial court's application of the law in issuing the preliminary injunction was not an abuse of discretion.

Crane's authorities in reliance, *Halmos v. Safecard Services, Inc.*, 272 Ill. App. 3d 532, 650 N.E.2d 555 (1995), and *Prentiss*, 277 Ill. 383, 115 N.E. 554, are distinguishable in that the cases sought to be enjoined there were filed only shortly after the Illinois action, before there had been substantial progress in the Illinois case. Conversely, here there was substantial litigation on the same controlling coverage issues. Crane has failed to demonstrate that a stay of the foreign actions is an abuse of discretion. Crane's assertion that it faces the prospect of never being reimbursed by its insurers is groundless. By its terms, the injunction allows Crane to resume the other litigation

upon the expiration of 30 days after the trial court's final order. We find that the weight of precedent and equity comport with the findings of the circuit court.

We now encounter the remaining issue, the defendants' appeal of the circuit court's order denying their motion to extend the duration of the preliminary injunction through all appeals in this proceeding. Instead, the court limited the duration of the preliminary injunction to "30 days after this case has been disposed of on the merits," reasoning that further extension of the injunction exceeded the scope of its jurisdiction. As the issue here is one of law, our review is *de novo. The Agency, Inc. v. Grove*, 362 Ill. App. 3d 206, 215, 839 N.E.2d 606, 614 (2005).

At the onset, we find merit in Crane's argument that because the purpose of a preliminary injunction is to preserve the status quo pending resolution of the merits of the case, citing *In re Marriage of Seffren*, 366 Ill. App. 3d 628, 637, 852 N.E.2d 302, 311 (2006), the limiting of the preliminary injunction's duration was proper. *Seffren*, we recognize, concerned a traditional preliminary injunction, and not an injunction against foreign litigation. Crane nonetheless argues that the circuit court lacked the authority to extend the preliminary injunction beyond the issuance of a final decision on the merits of the case. The defendants offer no persuasive authority to the contrary.

Defendants maintain that the injunction which issued below would not prevent Crane from litigating the foreign actions if it expires after the court has ruled and, therefore, the injunction should extend through all appeals. However, it is unclear why defendants did not request a permanent injunction in the circuit court. Certain defendants urge us now to use our power under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) to convert the preliminary injunction to a permanent injunction without remand and hearing by the court below. Although defendants rely upon *Granberg v. Didrickson*, 279 Ill. App. 3d 886, 665 N.E.2d 398 (1996), we perceive their reliance to be clearly misapplied:

"It is well settled that the purpose of a preliminary injunction is to prevent a threatened wrong pending a full hearing on the merits of the case. A proceeding pursuant to a preliminary injunction generally consists of an abbreviated evidentiary hearing on an emergency basis. The 'findings' of a court following a preliminary hearing do not carry with them the preclusive effect of *res judicata* and are considered provisional in nature. This court has stated that a trial court errs when it enters a permanent injunction after a preliminary injunction hearing, instead of waiting for a 'trial on the merits.' [Citations.]" *Granberg*, 279 Ill. App. 3d at 893, 665 N.E.2d at 403.

The *Granberg* holding essentially carved out an exception to this general rule as the issue presented concerned the constitutionality of a statute. Moreover, the parties in *Granberg* did not present any witnesses or evidence at the preliminary injunction hearing, thereby indicating that they did not contemplate a full trial on the merits. *Granberg*, 279 Ill. App. 3d at 893, 665 N.E.2d at 403. The preliminary injunction was converted to a permanent one to avoid a summary hearing on remand. Conversely, here the issues regarding insurance coverage for the national asbestos claims against John Crane are highly contested, as evidenced by the testimony presented at the hearing below. Accordingly, we do not perceive an exception to the general rule requiring a trial on the merits to sustain a permanent injunction. Thus, the trial court did not abuse its discretion in limiting the duration of the preliminary injunction to 30 days after the issuance of its final order.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's grant of the preliminary injunction and denial of defendants' motion to extend the injunction through all appeals in this case.

Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.