2023 IL App (1st) 230227-U

SIXTH DIVISION
March 17, 2023

No. 1-23-0227

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| IN THE INTEREST OF CALEB M., a Minor, | ) ) ) | Appeal from the Circuit Court of Rock Island County |
| (THE PEOPLE OF THE STATE OF ILLINOIS | ) ) | |
| Petitioner-Appellee | ) | No. 2020 JD 14 |
| v. | ) ) | |
| CALEB M., a Minor, | ) ) | Honorable Theodore Kutsunis, |
| Respondent-Appellant) | ) | Judge Presiding. |

Justice Tailor delivered the judgment of the court.
Justices Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The juvenile court's finding that respondent did not receive ineffective assistance of counsel after a full *Krankel* evidentiary hearing was not against the manifest weight of the evidence.

¶ 2     Following a negotiated agreement, respondent, Caleb M., was adjudicated delinquent for

attempted home invasion and sentenced to a three-year term of probation to expire on his 21st

birthday with a four-year adult sentence that was stayed. On appeal C.M. argues that he received ineffective assistance of counsel during plea negotiations because counsel advised him to enter into a plea when he informed counsel he wanted to go to trial and did not inform him that a new misdemeanor offense would trigger a probation violation and revocation of the stay of his adult sentence. For the following reasons, we affirm the judgment of the juvenile court on C.M.'s ineffective assistance of counsel claim.

¶ 3                               BACKGROUND

¶ 4     C.M., a juvenile, was charged on February 25, 2020, with home invasion. C.M. was represented in court by Mr. Ruud. On June 24, 2020, the parties reached an agreement wherein C.M. agreed to waive extended juvenile jurisdiction (EJJ) and his right to a bench trial and jury trial in exchange for a juvenile sentence of five years' probation or until he turned 21 years old on a lesser offense of attempted home invasion. It was agreed that his adult sentence of four years' imprisonment would be stayed pending further order of the court on the condition that he did not violate the terms of his juvenile probation. C.M. was sentenced on August 25, 2020, to juvenile probation for 36 months, which would end on his twenty-first birthday. One of the terms of his probation was that he was not to violate "any criminal statute of any jurisdiction." C.M. signed the probation order acknowledging the condition. C.M. also signed an adult sentencing order that stated C.M. agreed to an adult sentence of 4 years' imprisonment which was stayed pending a violation of the juvenile sentence. The terms of the adult sentence indicated that if C.M. violated the terms of his probation or was "alleged to have committed a new offense," a petition to revoke the stay could be filed. Mr. Ruud also signed the sentencing order, along with the judge and the assistant State's attorney. C.M. did not appeal.

¶ 5    On May 19, 2021, the State filed a petition to revoke stay of adult criminal sentence alleging that C.M. committed three criminal offenses.  Thereafter, on June 21, 2021, the State filed a petition to revoke juvenile probation alleging that C.M. committed two offenses, left Illinois without permission, and failed to complete a substance abuse assessment.  A warrant was issued for C.M.'s arrest.

¶ 6    On May 9, 2022, C.M. appeared in court after he was arrested on the warrant.  The State filed an amended petition to revoke stay of adult criminal sentence and an amended petition to revoke juvenile probation.  Both petitions alleged that C.M. had been convicted of two offenses in Iowa.  The case was continued for hearing.

¶ 7    On May 23, 2022, C.M. made a motion for a new attorney indicating he was unhappy with Mr. Ruud's representation.   On June 22, 2022, the court appointed a new attorney and continued the matter for a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). On August 16, 2022, newly appointed counsel filed a written motion to vacate C.M.'s admission and sentence based on ineffective assistance of counsel.  The court held a *Krankel* hearing on August 17, 2022.

¶ 8    At the hearing on C.M.'s motion, C.M. alleged that Mr. Ruud was ineffective because C.M. had been diagnosed with ADHD and Mr. Ruud took advantage of his mental status and anxiety associated with being in custody to coerce him into entering into an admission when he expressed his desire to proceed to trial on the merits on several occasions.  He also alleged that Mr. Ruud never reviewed the discovery with him at any point in this proceeding.  C.M. also alleged that he entered into an admission based on Mr. Ruud's assertion that he would continue to be detained awaiting a trial date and that he had already been detained in excess of the speedy

trial period due to precautions and restrictions associated with the COVID-19 pandemic. C.M. also claimed that Mr. Ruud indicated that a condition of his probation included the requirement of not incurring any felony offenses and never relayed the consequences of committing misdemeanor offenses. Had he known that misdemeanor offenses triggered a revocation of his probation, he would not have entered into an admission or sentence that subjected him not only to a period of incarceration but a period of incarceration without bond.

¶ 9    Mr. Ruud testified at the hearing and stated that he did review what little discovery there was with C.M.  He stated that the case was not overly complex in that the victim claimed that C.M. came into his house and assaulted him. The victim identified C.M. in a lineup. Subsequently, the victim requested a dismissal because he felt that C.M. spent enough time in jail but the State chose to proceed on the charges.  Mr. Rudd further explained that he discussed the three petitions the State filed with C.M.   One was the petition for EJJ that ultimately C.M. pled on. The other was a request for a discretionary transfer to adult court that exposed C.M. to an adult sentence of 6 to 30 years. The third petition was a request that C.M. be designated as a habitual offender. If found guilty, that would require him to be sentenced to the Illinois Department of Juvenile Justice until his 21st birthday.  Mr. Ruud discussed the State's offer to reduce the charge to attempted home invasion with C.M. and informed him that, if he were to take that deal, he would be released that day.  Mr. Rudd told C.M. that it was "one hundred percent his decision to go to trial or whether to take that deal."

¶ 10    Mr. Rudd further testified that he advised C.M. that a misdemeanor offense "would trigger the adult sentence."  Mr. Rudd referenced the adult sentencing order that C.M. signed indicating that the stay document filed with the court from when C.M. pled guilty clearly states

that a "new offense would be considered a felony or a misdemeanor." Mr. Rudd explained the document to C.M. and C.M. had an opportunity to read the document. Both C.M. and Mr. Rudd signed it.

¶ 11    Mr. Ruud denied taking advantage of C.M. based on his ADHD diagnosis. Mr. Ruud also testified that because of COVID, our supreme court suspended speedy trial rights for everyone, including juveniles and therefore, even if he "wanted to file something, I can't file something that does not have any basis in the law."

¶ 12    C.M. testified that he was innocent of the charges against him, and Ruud never went over the discovery with him. C.M. further stated:

"I pled out just so I could go home. This man told me don't get no felonies. I don't got to lie about nothing. I knew every consequence there was. If I was to catch a felony, I would go to the department of Illinois. I'm not denying that. I'm telling you all from the heart, from, like, from what I heard. From, like, I don't, like, don't judge me on the black and white paper. The man said don't catch a felony.

I haven't caught a felony. I've been on juvenile parole. If you catch a misdemeanor case, maybe you can get a violation. I'm not too sure. But it's not enough to even send you back to the prison. Just, please, I want justice. Can you please grant this motion and give me a chance at going to trial."

¶ 13    Following the hearing, the trial court denied C.M.'s request to withdraw his guilty plea and sentence. The court found that the terms of the plea agreement were adequately explained to C.M. by Mr. Ruud and by the court.

¶ 14    A hearing on the petition to revoke stay of adult sentence was held on September 14,

2022. Following the hearing, the trial court found that C.M. violated his probation and sentenced respondent to a total of four years in prison. This appeal followed.

¶ 15                                ANALYSIS

¶ 16    Before we address the merits of C.M.'s claims, we must discuss C.M.'s statement of facts. The statement of facts in C.M.'s opening brief clearly violates Illinois Supreme Court Rule 341. Rule 341(h)(6) requires a statement of the facts "necessary to an understanding of the case." Ill. S.Ct. R. 341(h)(6) (eff. July 1, 2008). C.M.'s statement of facts is missing large portions of salient facts, notably the procedural history including the filings, testimony and findings from the *Krankel* hearing. This court may strike a statement of facts when the improprieties hinder our review. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698 (2009). Accordingly, we exercise our authority to strike C.M.'s statement of facts and rely solely on the facts presented in the State's brief and the record filed in this court.

¶ 17    C.M. argues on appeal that his admission and sentence should be vacated because he received ineffective assistance of counsel. Specifically, C.M. argues that Mr. Ruud was ineffective because he failed to adequately apprise C.M. of the consequences of his admission in juvenile court.

¶ 18    The State argues that C.M. has forfeited the issue he raises here because his brief violates Illinois Supreme Court Rule 341(h)(7) in that his brief merely restates the arguments he made in the court below regarding Mr. Ruud's ineffective assistance. Ill. S.Ct. R. 341(h)(7) (eff. July 1, 2008). In addition, the State argues that C.M. does not explain how and why the trial court erred or how the juvenile court's findings are against the manifest weight of the evidence. Additionally, the State asserts that C.M. cites no authority supporting the numerous issues he has

raised on appeal.

¶ 18    Rule 341(h)(7) requires that the appellant's arguments contain his or her contentions and the reasons therefore, with citations to authorities and to the pages of the record relied upon in support of those contentions. Ill. S.Ct. R. 341(h)(7) (eff. July 1, 2008).  Mere contentions, without argument or citation to authority, do not merit consideration on appeal. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 401 Ill. App. 3d 868 (2010).

¶ 19    We agree with the State that C.M. has forfeited his argument under Rule 341(h)(7).  In his brief before this court, C.M. does not mention the *Krankel* hearing that was held on his ineffective assistance of counsel claims, does not challenge any portion of the *Krankel* hearing, and does not challenge the juvenile court's finding at the conclusion of the *Krankel* hearing. Instead, C.M. merely argues that he received ineffective assistance of counsel, listing only some of the points he raised in the juvenile court and citing generally the law on ineffective assistance of counsel.  Although C.M. correctly identifies our standard of review, C.M. does not explain how the juvenile court's finding that his ineffective assistance of counsel claims lacked merit following a full *Krankel* evidentiary hearing was manifestly erroneous, nor does he cite any case law to support any of his arguments.  Accordingly, we find that C.M. has forfeited his claims.

¶ 20    Forfeiture aside, the juvenile court's finding that C.M.'s ineffective assistance of counsel claims lacked merit following a *Krankel* hearing was not manifestly erroneous.  A *Krankel* hearing "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29.  A *pro se* defendant need only bring his or her claim to the trial court's attention. The defendant is not required to file a written motion in the trial court but may raise the issue orally or through a letter or note to the court. *People v. Ayres*,

2017 IL 120071, ¶ 11.  A *Krankel* hearing "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims" (*People v. Patrick*, 2011 IL 111666, ¶ 39) and "is intended to promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal" (*id*. ¶ 41). See *People v. Roddis,* 2020 IL 124352, ¶ 34.

¶ 19    The *Krankel* inquiry proceeds in two steps. When a defendant makes a posttrial claim of ineffective assistance, the court should first examine its factual basis. *People v. Jolly*, 2014 IL 117142, ¶ 29.  If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. *Id*. However, if the allegations show possible neglect of the case, new counsel should be appointed. *Id*. The newly appointed counsel can independently evaluate the *pro se* claim and avoid the conflict of interest that defendant's trial counsel would experience in trying to justify his or her actions contrary to the defendant's position. *Roddis*, 2020 IL 124352, ¶ 36.  The second step consists of an adversarial and evidentiary hearing on the defendant's claims of ineffective assistance, at which the defendant is represented by the *Krankel* counsel. *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 82.

¶ 20    Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo. Roddis*, 2020 IL 124352, ¶ 33.  However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, as in this case, we will reverse only if the trial court's action was manifestly erroneous. *People v. Cook*, 2018 IL App (1st) 142134, *People v. Smith*, 2016 IL App (1st) 140039, ¶ 14.  Manifest error is error that is clearly evident, plain, and indisputable. *People*

*v. Morgan*, 212 Ill. 2d 148, 155 (2004).

¶ 21    To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient and (2) counsel's actions resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Evans,* 209 Ill. 2d 194, 220 (2004). Under the first prong, a defendant must demonstrate that his attorney's performance fell below an objective standard of reasonableness. *Evans*, 209 Ill. 2d at 220. Under the second prong, prejudice is shown where there is a reasonable probability that the result would have been different but for counsel's alleged deficiency. *Id*. Failure to satisfy either prong of the Strickland test precludes a finding of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

¶ 22    When C.M. expressed his dissatisfaction with Mr. Ruud's representation, the juvenile court appointed new counsel for C.M.  New counsel subsequently filed a written motion outlining C.M.'s claims of ineffective assistance and represented C.M. at the full evidentiary hearing on the motion.

¶ 23    C.M.'s claim that he received ineffective assistance because he was not informed that a misdemeanor would trigger petitions for violation of probation and the revocation of the stay of his adult sentence is belied by the record.  The record establishes that C.M. signed two documents, a probation sentencing order and an adult sentencing order.  Both of these orders clearly stated that C.M. was not to commit any new offense.  In addition, Mr. Ruud testified at the hearing that he met and discussed the discovery with C.M.  He fully explained the possible outcomes of going to trial.  In addition, he discussed the specific consequences of making an admission to a reduced charge and discussed the conditions of probation that C.M. would receive.  C.M. was given a paper, which was explained to him and which he signed, that outlined

the specifics of the term of probation that he would receive, including the condition that he must not be arrested for any offense. Furthermore, the record shows that the juvenile court went to great lengths to explain the terms of the agreement, as well as the terms of the juvenile probation to C.M, including that C.M. was not to be arrested for any new offense  The court repeatedly asked C.M. if he understood and C.M. stated that he did.  Accordingly, we find that the juvenile court's holding that C.M. did not receive ineffective assistance of counsel was not manifestly erroneous.

¶ 21                                CONCLUSION

¶ 22    For the foregoing reasons, we affirm the judgment of the juvenile court.

¶ 23    Affirmed.