2020 IL App (2d) 190828U
No. 2-19-0828
Order filed October 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ABDUL MOHAMMED, | ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-75 |
| ICNA RELIEF USA; SAIMA AZFAR; HAMDARD CENTER FOR HEALTH AND HUMAN SERVICES; MOHAMMAD HAMID; KIRAN SIDDIQUI; MARYAM MIRZA; HAMDIA RAZVI; ISLAMIC CENTER OF NAPERVILLE; SHAHAB SAYEEDI; KHALID GHORI; BEENA FARID; SHOAIB KHADRI; PRAIRIE STATE LEGAL SERVICES; KERRY O'BRIEN; MARISA WIESMAN; LEGAL SERVICES CORPORATION, INC.; ICDVP INC.; and FARHEEN FATHIMA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Honorable Robert G. Kleeman |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court had jurisdiction to enjoin plaintiff, and it did not abuse its discretion in entering its injunction order. Therefore, we affirm.

¶ 2    *Pro se* plaintiff, Abdul Mohammed, appeals from the trial court's interlocutory order enjoining him from prosecuting various actions and from filing additional related actions. Plaintiff argues that the trial court lacked jurisdiction to enter its injunction order and that it erred in enjoining him from prosecuting a subsequently-filed action in Will County. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On January 22, 2019, plaintiff filed his complaint in this action (2019 suit) against defendants ICNA Relief USA (ICNA); Saima Azfar; Hamdard Center for Health and Human Services (Hamdard Center); Mohammad Hamid; Kiran Siddiqui; Maryam Mirza; Hamdia Razvi; Islamic Center of Naperville; Shahab Sayeedi; Khalid Ghori; Beena Farid; Shoaib Khadri; Prairie State Legal Services; Kerry O'Brien; Marisa Wiesman; Legal Services Corporation, Inc.; ICDVP Inc.; and Farheen Fathima. Plaintiff's complaint alleged 25 counts, including counts for libel, defamation, assault, personal injury, conspiracy, violations of his constitutional rights, and sexual harassment. The underlying facts and many of the named defendants are the same as in his previous suit filed March 22, 2017, in Du Page County circuit court, case number 17-L-356 (2017 suit), which was dismissed with prejudice. At the core of plaintiff's complaint against defendants is a 2016 domestic dispute with Fathima, his now ex-wife, and subsequent divorce proceedings and reports of physical and/or sexual abuse by plaintiff against Fathima and his three children. In 2016, Fathima entered the Hamdard Center, which was a domestic abuse shelter. The children were also removed from plaintiff's home.

¶ 5    In his complaint, plaintiff alleged that Fathima falsely claimed that she was a victim of domestic abuse, that the reports of child abuse to the Department of Children and Family Services (DCFS) were false, and that the removal of his children was unlawful. He also asserted that all defendants were followers of "Radical Islam," that he was a follower of "Moderate Islam," and

that all defendants considered the police and judges to be infidels. He broadly alleged that defendants harassed, intimidated, and threatened him based on his national origin, religion, and gender.

¶ 6    In between filing the 2017 suit and the 2019 suit, plaintiff filed additional actions in Du Page County circuit court that were largely based on the same operative facts: on October 4, 2017, against Fathima, ICNA, and the Hamdard Center and its officers and employees, alleging false reports of sexual abuse (17-L-1085); on February 18, 2018, against Fathima, ICNA, and the Hamdard Center and its officers and employees, alleging hate crimes and civil conspiracy (18-L-160); on February 26, 2018, against Fathima, ICNA, and the Hamdard Center and its officers and employees, alleging false reports of sexual abuse and counts stemming from his and Fathima's dissolution of marriage proceedings (18-L-206); and on March 19, 2018, against Fathima's attorneys and the Hamdard Center, alleging civil conspiracy, hate crimes, and intentional infliction of emotional distress (18-L-307). In addition, plaintiff filed four individual suits on June 11, 2018, against Hamdard Center officers and employees for orders of protection, all four of which were dismissed the same day.

¶ 7    On April 15, 2019, defendants in the 2019 suit filed a joint motion to stay proceedings. On April 16, 2019, plaintiff emailed defense counsel in response to receiving defendants' motion to stay proceedings. He wrote that he was working on a new charge as well as an additional 15 counts for this suit. He had "a Freight Train full of complaints," and he warned counsel to "get prepared to get your backside dragged to United States Senate Judiciary Committee." In their reply brief, defendants also attached emails from plaintiff as exhibits, including an email with the subject line "The Depo From Hell: With Chaos, Blood and Violence," which contained a link to a YouTube video that plaintiff found humorous. The video was of a deposition that ended in violence.

¶ 8    The trial court granted the motion to stay in part on June 18, 2019, staying all responsive pleadings but allowing any party to present a motion to dismiss at the next status hearing. It also ordered that plaintiff not file anything further in this case without express written permission by the court.

¶ 9    On June 24, 2019, plaintiff filed a new suit in Will County circuit court (Will County suit). The Will County suit named the defendants from the 2019 suit as well as additional defendants that included counsel for various 2019 suit defendants. The Will County suit complaint alleged 63 counts, including counts for sexual assault, sexual harassment, defamation, personal injury, and civil conspiracy. The suit was based largely on the same operative facts as the 2019 Du Page suit.

¶ 10    On July 10, 2019, plaintiff filed a charge of discrimination in the Illinois Department of Human Rights (IDHR), alleging that the Islamic Center of Naperville had denied his request for financial aid based upon his national origin, religion, and gender, and in retaliation for filing prior IDHR charges against the Hamdard Center. Plaintiff also filed a charge of discrimination against ICNA in the IDHR, alleging, *inter alia*, retaliation for filing the 2017 suit. On August 14, 2019, plaintiff filed a charge of discrimination in the IDHR against Hamdard Center, alleging discrimination based on his race, sex, religion, national origin, disability, and in retaliation for filing past complaints. He alleged that he applied for employment with Hamdard Center but was not granted an interview. Prior to the August 14, 2019 charge, plaintiff had already filed several charges of discrimination in the IDHR against the Hamdard Center.

¶ 11    On August 20, 2019, Fathima petitioned for an adjudication of direct and indirect civil contempt against plaintiff, arguing that the Will County suit violated the trial court's order not to file additional counts against defendants without leave of court. That same day, plaintiff emailed defense counsel, stating they should "[e]xpect considerable increase in heat in the coming days.

Expect the temperatures to rise up to 150 F in coming days in Cook and the collar counties." That same day, plaintiff sent an email with several charges attached. The subject line of the email was "The 1st Freight Train of Complaints has arrived." Attached charges included a National Labor Relations Board charge against ICNA, and IDHR discrimination charges against Hamdard Center and ICNA.

¶ 12    On August 21, 2019, the Islamic Center of Naperville and several individual defendants filed a motion for injunctive relief. They requested that the trial court enjoin plaintiff from prosecuting the Will County suit, a charge before the IDHR, and any other actions against them in Illinois related to the 2017 and 2019 suits. Over the next two days, other defendants filed similar motions for injunctive relief.

¶ 13    On August 26, 2019, the trial court granted all defendants leave to join the motions for injunctive relief and for contempt, and it scheduled a hearing on the motions for September 10, 2019. Fathima also filed a motion for temporary and preliminary injunction on September 6, 2019, in which she argued that plaintiff had previously filed multiple lawsuits in state and federal court against her and other defendants in this case.

¶ 14    Plaintiff responded to the motions, beginning each response with the heading: "DEFENDANT'S [*sic*] CONSPIRACY TO MURDER THE PLAINTIFF, SOLICITATION OF MURDER, SOLICITATION OF MURDER FOR HIRE AND ATTEMPT TO MURDER." He argued that the court should not enjoin him because he had the "right to defend himself from getting harmed and from getting murdered by the Defendants."

¶ 15    On September 10, 2019, the trial court heard the motions for injunctive relief. Plaintiff has not provided a transcript of the hearing. However, defendants included the report of proceedings for the hearing in their supporting record filed pursuant to Illinois Supreme Court Rule 328 (eff.

July 1, 2017). At the hearing, counsel for defendants argued in relevant part as follows. Plaintiff was engaged in multifarious and harassing litigation against all defendants and additional persons, including attorneys for defendants. The series of lawsuits began in 2017 before the same trial court, when plaintiff alleged that defendants had conspired to sabotage his divorce proceedings and falsely reported to DCFS and the police that he had assaulted his ex-wife and children. The trial court dismissed the 2017 litigation. In the current case, the trial court had ordered plaintiff not to file anything further without leave of court, and six days after that order, plaintiff filed the Will County suit, making substantially the same allegations as in this case. Counsel cited to plaintiff's emails, arguing that they showed his intent to harass. Addressing plaintiff's response that defendants sought to murder him, counsel argued that the accusations were a response merely to defendants trying to enjoin his multifarious and harassing litigation. Counsel continued that if such claims were not part of a judicial proceeding, they would be defamatory.

¶ 16   Counsel also argued that plaintiff's litigation was making it harder for defendants and new defendants to obtain representation, citing the fact that one attorney, who merely appeared at a status hearing for one defendant, was a named defendant in the Will County suit. In addition, counsel had received ARDC complaints against them, and their boss also received an ARDC complaint simply for having their name on a pleading.

¶ 17   Plaintiff argued as follows. It was his understanding that he was unable to file anything more in this case, and he had no intention of violating the trial court's order. He was "truly standing here under a lot of stress not only because there [were] so many attorneys presenting." The trial court interjected, "They're here because you asked them to be here." Plaintiff responded "yes" and continued to argue that he had evidence that defendants decided he should be "finished" before he

filed another complaint. He referenced three men that "bypassed" his building, following dismissal of his 2017 suit.

¶ 18    The trial court asked him why he filed in Will County, and plaintiff responded that he went to Will County because the circuit court there had decided a similar but unrelated case, which he believed received favorable response. He denied that, if the trial court granted the injunction against him, he would file in a different county that he thought would be more favorable.

¶ 19    The trial court asked plaintiff about his email in which he stated he had a freight train full of complaints, and another email about turning up the heat in Cook and collar counties. Plaintiff admitted to sending those emails. Plaintiff argued that he had good intentions in sending the emails that he sent, including an email in which he sent a link to a "funny video" of a deposition. The trial court then asked plaintiff to explain his intentions with an April 18 email in which he bemoaned the head of the ARDC unleashing lawyers like defense counsel upon the people of Illinois. Plaintiff responded that it was a political statement, and he had a right to free speech. The trial court acknowledged that plaintiff had a right to free speech, but it explained that it was trying to determine if he had a proper purpose for his later filed actions. The trial court stated that, after reading plaintiff's emails, his motive to harass was becoming "clearer and clearer." The trial court asked plaintiff to tell him why he should find otherwise, and plaintiff responded that he was not a lawyer, he was *pro se*, and that he was under a lot of stress.

¶ 20    The trial court granted the injunction against plaintiff. It explained that to enter the injunction, it had to make two findings: First, whether the parties and issues involved were the same or the issues involved in a later action could and ordinarily should be disposed of in the course of the original action; and second, whether there was a proper purpose for the maintenance of the later filed actions. For the first finding, the trial court had examined plaintiff's various

complaints, and it found that the number of parties named were not shrinking but growing. When plaintiff did not like the outcome of an action, he filed another action. It concluded that the issues were the type that could and ordinarily should be disposed of during the original action. Turning to the second required finding, the trial court found that plaintiff did not appear to have any proper purpose. It cited plaintiff's other complaints, which alone showed an intent to harass, and it further cited plaintiff's emails, which left "no question" in the court's mind that plaintiff intended to harass defendants. The trial court stated, "If this was a criminal case I'd find it beyond a reasonable doubt."

¶ 21    The trial court entered a written injunction order the same day. Therein, the trial court found that plaintiff had filed multiple lawsuits and administrative charges that sought relief upon many of the same operative facts, including the 2017 suit, the 2019 suit, the Will County suit, and three charges with the IDHR. It further found that plaintiff had engaged in the filing of multifarious litigation for the improper purpose of vexing and harassing defendants. Finally, it found that plaintiff's conduct established a reasonable likelihood that he would continue to file multiple, duplicative, vexatious, and harassing lawsuits against defendants unless enjoined. Accordingly, the trial court ordered the following: Plaintiff was enjoined from prosecuting or proceeding with the Will County suit and was directed to voluntarily dismiss the suit; plaintiff was enjoined from proceeding with three separate IDHR charges and was directed to voluntarily dismiss those charges; and plaintiff was enjoined from filing, prosecuting, or proceeding with any other, further, or additional actions against any and all current defendants in any Illinois court or administrative agency pertaining to any matters, allegations, claims, or charges which have been made or relate to any matters, allegations, claims, or charges that were made in the 2019 suit or in the previously-dismissed 2017 suit. The trial court's injunction order was to remain in effect until dissolved or

modified by the court. The injunction order did not apply to pending appeals or to plaintiff's divorce proceedings.

¶ 22    Later that day, plaintiff moved to voluntarily dismiss the Will County suit in compliance with the order. An agreed order entered on September 16, 2019, dismissing the Will County suit without prejudice.

¶ 23    Plaintiff timely filed a notice of interlocutory appeal from the trial court's injunction order. Plaintiff also moved in this court to stay the injunction on appeal. We denied the motion to stay.

¶ 24                                    II. ANALYSIS

¶ 25    Plaintiff identifies nine issues on appeal. The issues are, in pertinent part, as follows: (1) whether the trial court had jurisdiction to enjoin plaintiff from filing additional, related lawsuits or administrative charges against defendants; (2) whether the trial court had jurisdiction to enjoin plaintiff from prosecuting his IDHR charges; (3) whether the trial court erred in directing plaintiff to dismiss the Will County suit; (4) whether the trial court erred in determining that the Will County suit was duplicative of the 2019 suit; (5) whether the trial court erred in directing plaintiff to dismiss the Will County suit against those defendants not named in the 2019 suit; (6) whether the trial court erred in granting the injunction order against plaintiff when he presented a *prima facie* case that defendants conspired to murder him, solicited murder against him, and attempted to murder him; (7) whether the injunction order was equitable in light of plaintiff's murder allegations; (8) whether the trial court had jurisdiction to enjoin plaintiff's federal Title VII claims; and (9) whether defendants and their attorneys should be sanctioned for fraud.

¶ 26    We note that plaintiff's brief fails to include relevant standards of review and contains a wholly insufficient statement of facts. Plaintiff's statement of facts consists of one paragraph without any citations, providing only that he is disabled due to injuries allegedly caused by

defendants, that he is taking 12 medications a day, and that the Social Security Administration found him disabled.

¶ 27     Therefore, we first address defendants' argument that plaintiff's brief fails to comply with Illinois Supreme Court Rule 341 (eff. May 25, 2018). They argue that plaintiff was required to provide a statement of facts necessary to the understanding of the case, with appropriate references to the pages of the record on appeal. Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018). He was also required to provide the applicable standard of review for each issue. Ill. S. Ct. R. 341(h)(3) (eff. May 25, 2018). Defendants contend that plaintiff's brief failed to comply with either rule, and that it therefore lacks substantial conformity with supreme court rules and should be stricken.

¶ 28     We agree that plaintiff's brief fails to comply with Rule 341. In particular, his statement of facts is inadequate and hindered our review. We had to rely on defendants' brief to direct us to relevant portions of the record to establish the facts of this litigation. In plaintiff's reply brief, he "agrees there are some shortcomings," but he argues that his brief's deficiencies are "unintentional" and did not prejudice any party. He argues that his brief is still "very clear, succinct, and self-explanatory," and he asks us to "waive any shortcomings *** in conforming with Illinois Supreme Court Rule 341 and shove justice down the throats of the Defendants and their attorneys the hard way." Not only is plaintiff's brief anything but clear, succinct, and self-explanatory, but this court does not "shove justice" down anyone's throat. We admonish plaintiff to refrain from inflammatory and inappropriate language. Such language does nothing to advance a litigant's argument but merely demonstrates disrespect to this court and the other parties.

¶ 29     Failure to comply with the rules governing appellate briefs is not an inconsequential matter, and a party's failure to comply with Rule 341 is grounds for disregarding its arguments on appeal. *Burmac Metal Fishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005).

This court is also within its rights to dismiss an appeal for failure to provide a complete statement of facts. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 9.

¶ 30     While we would be within our rights to dismiss this appeal, we will address two core contentions of plaintiff's appeal, those being (1) whether the trial court had authority to enjoin plaintiff and (2) whether the trial court erred in enjoining plaintiff from prosecuting the Will County suit. Defendants have provided a sufficient account of the relevant facts and procedural history to address those issues, and we recognize that striking an entire brief is a harsh sanction. *Hall*, 2012 IL App (2d) 111151, ¶ 15. However, we do not address the remainder of plaintiff's arguments, including his argument for sanctions against defendants based upon fraud and his arguments that the injunction order was improper, based on his conclusory allegations of conspiracy to murder, solicitation to murder, and attempt to murder. Plaintiff's brief, devoid of any meaningful statement of facts and citations to the record, does not allow for review of these arguments.

¶ 31                           A. Jurisdiction to Enjoin

¶ 32     Plaintiff argues that the trial court lacked jurisdiction to enter its injunction order. In particular, he argues that the trial court lacked authority to enjoin him from filing additional related actions, from proceeding with his three charges before administrative agencies, and from prosecuting his Title VII claims in state court. Plaintiff contends that one must first exhaust all available administrative remedies before involving the circuit court or appellate court, relying on *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308 (1989).

¶ 33     Defendants respond that court precedent establishes the authority of a trial court to enter an injunction to prevent vexatious and harassing litigation. See *In re Marriage of Sheaffer*, 2013

IL App (2d) 121049, ¶ 11. Furthermore, they argue that the trial court's authority to enjoin plaintiff extended to his charges before an administrative agency. *Id.* ¶ 13.

¶ 34     We reject plaintiff's argument. It is well established that Illinois courts may issue an injunction to restrain parties from filing or proceeding with related actions to prevent vexatious or harassing litigation. *People ex rel. Lake County Bar Ass'n v. Circuit Court of Lake County*, 31 Ill. 2d 170, 173-74 (1964) ("The jurisdiction of a court of equity to restrain the maintenance of vexatious or harassing litigation is well established."); *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶ 11. Illinois courts not only have jurisdiction to enjoin vexatious or harassing litigation in other Illinois courts but also in foreign courts. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698-700 (2009). The court's power to restrain a person from instituting or proceeding with a suit in a foreign state derives from the court's authority over that person, not any authority over the foreign court. *Pfaff v. Chrysler Corp.*, 155 Ill. 2d 35, 43 (1992), *overruled on other grounds by ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 535 (2010). Furthermore, this court has recognized that the same principles that permit enjoining an action in another court also apply to permit enjoining an action before an administrative agency. *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶ 13 ("[A]lthough an administrative agency instead of another court is involved, the principles *** are analogous.").

¶ 35     Here, the trial court's injunction was against plaintiff, not against other courts or agencies, to prevent him from prosecuting harassing or vexatious litigation against defendants. Accordingly, the trial court had jurisdiction to enjoin plaintiff from prosecuting related claims before other Illinois courts, including his related federal claims, and before administrative agencies.

¶ 36     Furthermore, plaintiff's reliance on *Castaneda* is misplaced. There, the supreme court addressed whether the plaintiff needed to exhaust his remedies before the Illinois Human Rights

Commission, an administrative agency, before he could appeal the decision to the appellate court. *Castaneda*, 132 Ill. 2d at 308. The supreme court held that the plaintiff must exhaust his administrative remedies, which ordinarily included seeking a rehearing *en bloc* before the Illinois Human Rights Commission. *Id.* Here, the *Castaneda* holding is inapposite because the issue before the trial court was never whether it had jurisdiction to review a decision of an administrative agency. Instead, as we have already established, the trial court did not need any authority over the administrative agencies to enjoin plaintiff from prosecuting charges before them.

¶ 37                                  B. The Injunction Order

¶ 38     Having held that the trial court had jurisdiction to enjoin plaintiff from filing vexatious or harassing litigation before other courts or agencies, we turn to the propriety of the trial court's order enjoining the Will County suit. Whether to grant an injunction restraining a party from filing or prosecuting related actions to prevent vexatious or harassing litigation depends on the facts of the case, and we review such an injunction for an abuse of discretion. *In re Marriage of Gary*, 384 Ill. App. 3d 979, 983 (2008). An abuse of discretion occurs where no reasonable person could agree with the trial court's decision. *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶ 10.

¶ 39     Plaintiff argues that the trial court erred in determining that the Will County suit was duplicative with this case and in ordering him to dismiss the Will County suit, including against newly named defendants. In his brief, he individually argues that each of the 63 counts were not duplicative of his 25 counts here. Plaintiff also argues that the injunction order is "so broad and so illegal" that it prohibits him from prosecuting an action in as many as 130 Illinois administrative agencies. Plaintiff claims that, due to the injunction order, he has not been able to report his alleged injuries caused by defendants to his primary care physician, psychiatrist, neurologist, and other doctors, as they are mandated reporters of abuse.

¶ 40 Defendants respond that the trial court did not abuse its discretion in entering the injunction. They argue that the injunction is not overbroad, as the order did not enjoin plaintiff from filing actions in other states or from filing unrelated claims in Illinois. They argue that the order certainly did not prevent plaintiff from seeking medical treatment or from filing police reports of criminal activity. Moreover, the injunction did not reach his divorce proceedings.

¶ 41 Defendants also argue that since plaintiff's divorce case, he has filed over a dozen lawsuits against defendants. Defendants cite the additional cases plaintiff filed in Du Page County circuit court (see *supra* ¶ 6), as well as four federal cases before the Northern District of Illinois, which they ask us to take judicial notice of. Defendants argue that plaintiff's incessant filing of lawsuits and administrative complaints, as well as his threats to continue filing more, justified the trial court's injunction.

¶ 42 Turning to the Will County suit, defendants argue that the trial court properly determined that it was duplicative and brought for an improper purpose. They argue that, after the trial court ordered plaintiff not to file anything further in this case on June 18, 2019, plaintiff promptly filed the Will County suit on June 24, 2019, to circumvent the trial court's order. They argue that the Will County suit named all defendants from the 2019 suit as well as additional defendants, including law firms and attorneys that represent defendants in this case. They contend that nearly all of the new Will County suit defendants were connected to a defendant in this case, and that the trial court properly observed that the Will County suit is a continuation of plaintiff's ever-expanding claims against an ever-expanding group of defendants.

¶ 43 Defendants continue that the Will County complaint was an embellished and enhanced version of the instant complaint. Defendants acknowledge that plaintiff has added additional causes of action, but they argue that the pleadings are still based on the same core of operative

facts that began in 2016 as a domestic dispute between plaintiff and his ex-wife. Defendants argue that, therefore, the Will County suit allegations could and ordinarily should have been disposed of in the instant action. Moreover, they argue that the trial court properly determined that plaintiff's purpose in filing the Will County suit was to harass defendants, evidenced by plaintiff's emails to defense counsel.

¶ 44   Finally, defendants argue that the issue over the Will County suit is moot because plaintiff voluntarily dismissed that suit. We note, however, that plaintiff was directed by the trial court to dismiss the Will County suit, and we are being asked to review the propriety of that order. Moreover, if we were to reverse the trial court's injunction, plaintiff would likely be able to refile the suit. See *Hudson v. City of Chicago*, 228 Ill. 2d 462, 483 (2008) ("An action that is voluntarily dismissed by the plaintiff may be refiled within one year or within the remaining limitations period, whichever is greater."); 735 ILCS 5/13-216 (West 2018) (when the commencement of an action is stayed by an injunction, the time enjoined is not part of the time limited for the commencement of the action). Therefore, we reach whether the injunction order properly enjoined the Will County suit.

¶ 45   We reject plaintiff's argument and hold that the trial court did not abuse its discretion in enjoining plaintiff from prosecuting the Will County suit. We have already established that the circuit court has authority to enjoin related actions to prevent vexatious and harassing litigation. A party seeking to enjoin a later filed action in other Illinois courts need not show the factors for a typical injunction. *In re Marriage of Sheaffer*, 2013 IL App (2d) 121049, ¶ 11. Instead, the party must show: (1) either the parties and the legal issues involved are the same or the issues involved in the later filed action are of the type that can and ordinarily should be disposed of in the course

- 15 -

of the original action; and (2) there does not appear to by any proper purpose for the maintenance of the later-filed action. *Id.*

¶ 46    Here, the trial court did not err in determining that the issues raised by plaintiff in the Will County suit were the type that could and ordinarily should be disposed of during the original action. The factual allegations of the Will County suit still center around plaintiff's 2016 domestic dispute and divorce proceedings. In the Will County suit, two newly named defendants were Du Page Legal Assistance Foundation (DLAF) and Cecilia Najera, who DLAF had appointed as plaintiff's attorney in his 2016 divorce proceedings. Plaintiff's allegations against DLAF and Najera date back to the 2016 divorce proceedings, with allegations including discrimination and harassment against him stemming from that representation. The allegations against DLAF and Najera do not appear to go beyond mid-2018, before plaintiff filed the 2019 suit.

¶ 47    Other newly named defendants were attorneys or firms representing defendants in the 2019 suit. For instance, Rima Kapitan and Kapitan Law Offices represent the Hamdard Center on this appeal, and they were named as defendants in the Will County suit. Plaintiff's allegations against Kapitan and many others remain the same as those against defendants named in the 2019 suit: that they acted in concert to wrong him in response to the events surrounding his divorce proceedings. Thus, even though plaintiff dresses up the allegations with numerous legal causes of action, the underlying allegations of the Will County suit are substantially the same as the 2019 suit, where they can and ordinarily should be disposed of.

¶ 48    The trial court also did not err in determining that plaintiff brought the Will County suit for an improper purpose. The trial court reviewed plaintiff's myriad complaints, and it also reviewed and questioned plaintiff about his emails to defense counsel. Our review of those same materials demonstrates that the trial court's determination was reasonable. Plaintiff's emails strongly

supported that he was using the court system to harass and vex defendants. In response to a motion for contempt, plaintiff emailed defense counsel that he would "increase the heat" in other counties with additional suits. In another email, he threatened to produce a "freight train" of complaints and drag the parties all the way to the Senate Judiciary Committee in response to a motion to stay the proceedings—proceedings that are only the latest in a series of similar and expanding proceedings against many of the same defendants. Plaintiff kept his word, going so far as to attach IDHR and National Labor Relations Board charges against defendants to an email with the subject line "The 1st Freight Train of Complaints has arrived." In yet another email to defense counsel, entitled "The Depo From Hell: With Chaos, Blood and Violence," plaintiff linked to a "funny video" of a deposition that ended with a violent altercation.

¶ 49    Even the timing of the Will County suit was telling: Plaintiff filed the suit within one week of the trial court ordering him not to file anything further in the 2019 suit without express leave of court. We note that plaintiff did not have to file another suit to add counts to his complaint. The trial court's order did not preclude him from seeking leave to amend his complaint, but he never sought leave.

¶ 50    We further note that the Will County complaint is rife with personal attacks and grievances. For instance, plaintiff alleged that Linda Sarsour, a co-founder of another named defendant, the Women's March, Inc., met with other defendants and thereafter unleashed "her Feminist Hate" upon him. Plaintiff described Sarsour as an "out and out Feminist Hate Monger and a Radical Islamic Extremist" and a "rabid dog in human form." It is not clear from plaintiff's complaint what, if anything, Sarsour did to him personally. He alleged that she appeared at ICNA events, and he concluded that she conspired to sabotage his divorce proceedings; he does not explain how. Other than that, he simply seems to not like her. He ended his jeremiad against Sarsour by calling

her "a plain, ill-dressed woman in a lumbering hijab," who "indulges in coquettish vanity," and by asserting that his Will County suit "should bring Defendant Sarsour back on [*sic*] earth with a big thud." Such allegations strain the imagination to uncover a proper purpose.

¶ 51    Moreover, the trial court's injunction order was not overbroad. It was tailored to prevent plaintiff from continuing to file ever more complaints based on the same operative facts against the same defendants and anyone associated with them. The injunction does not interfere with plaintiff's divorce proceedings, it does not prevent him from filing unrelated claims, and it certainly does not prevent him from seeing a doctor or filing a police report.

¶ 52    Accordingly, the trial court did not abuse its discretion in enjoining plaintiff from prosecuting the Will County suit. We remind plaintiff that Illinois courts are not meant as instruments for personal vendettas. They are stewards of the law, managing large dockets involving serious disputes. When a litigant abuses the court system to harass or vex others, the results are an injustice to the other parties and a waste of judicial resources.

¶ 53                                    III. CONCLUSION

¶ 54    For the reasons stated, we affirm the judgment of the Du Page County circuit court. In addition, plaintiff has two open motions from September 28, 2020, asking us to take judicial notice of various materials. These motions were filed in violation of our August 19, 2020, order, in which we ordered that plaintiff not file additional motions on this appeal. We therefore strike plaintiff's open motions.

¶ 55    Affirmed.